Floyd Ray WASHINGTON *v.* STATE of Arkansas

CR 81-12                                    621 S.W. 2d 216

Supreme Court of Arkansas
Opinion delivered September 21, 1981

*E. Alvin Schay*, State Appellate Defender, by: *Jack T. Kearney*, Deputy Appellate Public Defender, for appellant.

*Steve Clark*, Atty. Gen., by: *Theodore Holder*, Asst. Atty. Gen., for appellee.

DARRELL HICKMAN, Justice. The appellant, Floyd Ray Washington, argues three reasons for reversing his convictions of aggravated robbery and theft: His arrest was without probable cause; his identification was the result of an impermissibly suggestive pretrial lineup; and, two of his three prior convictions were improperly admitted into evidence. Finding no merit to these arguments, we affirm the judgment.

Washington was charged with robbing the Holly Farms Fried Chicken store on Asher Avenue in Little Rock, Arkansas, on June 3, 1979. A police detective, acting on a tip that Washington had committed several so-called "chicken" robberies, compiled a packet of six photographs from police files, made one photograph, and showed it to the manager of a Kentucky Fried Chicken store that had been robbed. The

manager identified Washington. The next day the same detective, with another detective, saw a car being driven by one of Washington's friends, a man who had been picked up a few days earlier in connection with another robbery. The detectives pulled the car over, found Washington to be a passenger and arrested him without a warrant.

Washington argues that his arrest was without probable cause and the charges must be dismissed. In this case the existence of probable cause is irrelevant to whether the conviction was obtained in violation of due process of law. An arrest without probable cause would not merit reversal and dismissal of a conviction. *State* v. *Block*, 270 Ark. 671, 606 S.W. 2d 362 (1980).

In a lineup held on the 14th of June, an employee of Holly Farms identified Washington as the man who came in, put a gun on her, ordered her to open the safe, and robbed her. It occurred in the back part of the building and, according to the victim, it was well-lighted. She had difficulty opening the safe and asked Washington to "take the gun off" so she could open it. She still had difficulty, Washington pulled his gun again, and finally she opened the safe and gave him the contents. She said this all occurred over a five or six minute time span. She said he was short, certainly not taller than her height of five feet four.

The lineup she saw was composed of six black men, with Washington on one end and the shortest. He is approximately five feet, one to two inches tall. The next tallest was five feet, five inches. The tallest was just under six feet. Washington had what she described as a thin "scattered beard." Four of the individuals in the lineup had facial hair.

Washington's argument is that there was no one in the lineup as short as he is and, therefore, the lineup was impermissibly suggestive. The detective who made up the lineup said he provided people as close as he could to Washington's size. He said he simply did not have any shorter people available.

In *McCraw* v. *State*, 262 Ark. 707, 561 S.W. 2d 71 (1978),

we said that whether identification testimony is admissible is essentially a question of reliability. It is argued that the pretrial lineup was too suggestive because Washington was the shortest man, on the end, and the victim knew he was short. Washington was not entitled to have six men all with facial hair, five feet, one inch tall. None of the men were "tall" in the usual sense and one was about the height the victim gave to the police — about five feet, four.

There are many factors to be considered in determining reliability: The opportunity to observe the criminal, the accuracy of the victim's description, the amount of certainty of the victim at the time of the confrontation, and the length of time between the crime and the identification, all to be weighed against any suggestions. *McCraw* v. *State, supra.* When all these factors are weighed, the identification in this case cannot be seriously challenged. It was well-lighted. The employee described him fairly accurately. Eleven days later she, without hesitation, picked him out of a lineup. We cannot say, viewing the circumstances as a whole, that the lineup was patently tainted.

Washington was charged as a habitual criminal and three of his prior convictions were admitted as evidence of that fact. Two were for offenses that occurred after the date of the robbery in this case. It is argued that such convictions are not properly admissible as prior convictions. The same argument was made by Washington in the case of *Washington* v. *State*, 271 Ark. 420, 609 S.W. 2d 33 (1980), and we decided it had merit. However, shortly thereafter, we overruled that decision in *Conley* v. *State*, 272 Ark. 33, 612 S.W. 2d 722 (1981). We decided that Arkansas's habitual criminal statute was not designed to act as a deterrent, as we had supposed in *Washington*, but is simply a punitive statute, which provides in clear language that in an appropriate case, a prior conviction, regardless of the date of the crime, may be used to increase punishment.

Since we adhere to the *Conley* decision, Washington's argument must fail.

Affirmed.