STATE of South Dakota, Plaintiff
and Appellee,

v.

John Walter GEHRKE, Defendant
and Appellant.

No. 17194.

Supreme Court of South Dakota.

Considered on Briefs April 24, 1991.

Decided Aug. 14, 1991.

Roger A. Tellinghuisen, Atty. Gen., Patricia J. Cronin, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Allen J. Eide, Gribbin, Burns & Eide, Watertown, for defendant and appellant.

SABERS, Justice.

Defendant appeals his conviction of aggravated assault, claiming that: (1) the information charging him was insufficient; (2) the sentence was improperly enhanced under the habitual offender statute; and (3) the sentence constitutes cruel and unusual punishment.

### Facts

In the fall of 1989, John Gehrke (defendant) offered a witness in a criminal trial $150 to change her testimony. He was subsequently charged with tampering with a witness in violation of SDCL 22–11–19, a felony.

On January 8, 1990, while free on bail and awaiting trial on the witness-tampering charge, defendant committed the principal offense in this appeal. On that date, a South Dakota highway patrol officer came upon defendant in a pickup parked at the side of a Clark County road. When the officer approached the pickup on foot to investigate, he observed a .22 caliber rifle under the seat and smelled alcohol in the cab. The officer ordered defendant out of the pickup and administered the preliminary breath test (PBT), which defendant failed. After being informed that he was under arrest for DWI, defendant returned to his pickup and, against the officer's orders, started his truck and parked it in the ditch. When defendant attempted to return to the pickup a second time to retrieve his cigarettes, the officer ordered defendant into the patrol car, and defendant responded by punching the officer in the

face. The officer then radioed for assistance and other local police soon arrived on the scene. As they placed defendant in the patrol car after handcuffing him, defendant kicked the highway patrol officer in the stomach. On the way to the Watertown jail, defendant damaged the interior of the patrol car.

On January 25, 1990, a jury convicted defendant of the witness-tampering charge.

Four days later, defendant was arraigned at a preliminary hearing on the principal offense. He was charged with:

(1) driving while intoxicated in violation of SDCL 32–23–1;

(2) aggravated assault in violation of SDCL 22–18–1.1(3);

(3) possession of a loaded firearm while intoxicated in violation of SDCL 22–14–7(3); and

(4) second degree intentional damage to property in violation of SDCL 22–34–1.

In addition to these four charges, the state filed a separate Part II "habitual offender" information under SDCL 22–7–11 based on defendant's conviction of witness-tampering four days earlier.

On February 26, 1990, defendant was sentenced on the witness-tampering conviction to five years' imprisonment, with 2½ years conditionally suspended, and a $1,000 fine.

On May 16, 1990, a jury found defendant guilty of DWI and aggravated assault but acquitted him of possessing a loaded firearm while intoxicated and second degree intentional property damage.

At a motion hearing and sentencing held May 29, 1990, defendant moved for dismissal of the aggravated assault conviction and the habitual offender information. The circuit court denied both motions. On the DWI conviction, the court sentenced defendant to one-year revocation of his driver's license. On the aggravated assault felony conviction, as enhanced under the habitual offender statute at SDCL 22–7–7, the court sentenced defendant to the maximum punishment of 25 years imprisonment.

Defendant appeals and claims that:

(1) The aggravated assault information was insufficient because it was not specific enough to bar a subsequent prosecution for the same offense.

(2) The sentence for aggravated assault was improperly enhanced under the habitual offender statute because there was no prior felony conviction at the time he committed the principal offense.

### 1. Sufficiency of Information

■ The information for aggravated assault states that on January 8, 1990, defendant did

intentionally attempt to cause or knowingly cause any bodily injury to a law enforcement officer, to-wit: South Dakota Highway Patrolman Frank Krumm, who was engaged in the performance of his duties, by striking [him] with defendant's fist or hand and by striking [him] with defendant's foot, and said defendant did thereby commit the crime of Aggravated Assault in violation of SDCL 22–18–1.1(3)[.]

SDCL 22–18–1.1(3) provides: "Any person who ... [a]ttempts to cause or knowingly causes any bodily injury to a law enforcement officer or other public officer engaged in the performance of his duties ... is guilty of aggravated assault. Aggravated assault is a Class 3 felony."

Defendant contends the information was defective because it alleges his offense in the disjunctive ("did ... intentionally attempt to cause *or* knowingly cause any bodily injury to a law enforcement officer" (emphasis added)). He maintains that since it is not clear whether he is being accused of injuring the officer or merely attempting to injure him, it is also not clear which of the two he was convicted of, and his conviction therefore might not serve as a bar to future prosecution on one of the two alternatives. His claim is without merit.

In the first place, the disjunctive appears in the statute itself and the information merely quotes the language of the statute. "An indictment is generally deemed adequate if it follows the language of the

criminal statute or its equivalent." *State v. Kleinsasser,* 436 N.W.2d 279, 281 (S.D.1989) (citing *State v. Reutter,* 374 N.W.2d 617 (S.D.1985); *State v. Mouttet,* 372 N.W.2d 121 (S.D.1985); *State v. Logue,* 372 N.W.2d 151 (S.D.1985)).

Secondly, the use of the disjunctive in this case creates no uncertainty about defendant's charge. While "[p]leading in the disjunctive has been held fatally defective," *State v. Strauser,* 75 S.D. 266, 63 N.W.2d 345, 347 (1954) (citation omitted), it is fatally defective only if it leaves the defendant in doubt about which of two offenses under the same statute he is being charged with. *Id.* That is not the case here because assaulting an officer and attempting to assault an officer are not two offenses under SDCL 22–18–1.1(3), but simply two ways to commit the same offense. *State v. Dennis,* 294 N.W.2d 797, 798 (S.D.1980). Therefore, defendant's conviction for violating SDCL 22–18–1.1(3) is a bar to any future prosecution for a violation of the same statute arising out of the same incident.

Finally, any remaining doubt about which acts by defendant are being prosecuted under SDCL 22–18–1.1(3) is resolved by the information which specifies that defendant is accused of "striking [officer] with defendant's fist or hand and ... with defendant's foot[.]" Even though a valid information need not "state the particular details of the crime," *Kleinsasser, supra,* this information exceeds the minimum requirements of the law and provides adequate notice of the charge and the acts barred in any subsequent prosecution.

We find the information sufficient in all respects.

### 2. Prior Felony Conviction

SDCL 22–7–7 provides in part: "When a defendant has been convicted of one or two prior felonies ... in addition to the principal felony, the sentence for the principal felony shall be enhanced by changing the class of the principal felony to the next class which is more severe...."

SDCL 22–7–11 provides in part: "An allegation that a defendant is a[ ] habitual criminal must be filed as a separate information at the time of, or before, his or her arraignment...."

The sequence of events is as follows:

Jan. 8, 1990: commission of principal offense

Jan. 25, 1990: guilty verdict in prior felony

Jan. 29, 1990: arraignment on principal offense and filing of habitual offender information

Feb. 26, 1990: sentencing for prior felony

May 16, 1990: guilty verdict in principal offense

May 29, 1990: sentencing for principal offense

Defendant claims that the sentence for the principal offense cannot be enhanced under SDCL ch. 22–7 unless the *conviction* on the prior felony occurred before the *commission* of the principal offense. State argues that because SDCL ch. 22–7 does not expressly require the prior felony conviction to precede the commission of the principal offense, the sentence for the principal offense may be enhanced by the prior felony so long as the prior felony conviction occurred sometime before the sentencing date, i.e., May 29, 1990.

The rule in most jurisdictions with habitual offender statutes is that the prior felony conviction must precede the commission of the principal offense. *United States v. Balascsak,* 873 F.2d 673, 682 (3rd Cir.1989), *aff'd,* 902 F.2d 1562 (3rd Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 173, 112 L.Ed.2d 138 (1990); *State v. Ellis,* 214 Neb. 172, 333 N.W.2d 391, 394 (1983) (*Ellis I*); *State v. Lohrbach,* 217 Kan. 588, 538 P.2d 678 (1975); *State v. Midell,* 40 Wis.2d 516, 162 N.W.2d 54, 59 (1968); 39 Am.Jur.2d *Habitual Criminals* § 6 (1968); Annotation, *Habitual Criminal Statutes,* 24 A.L.R.2d 1247, 1248–1249 (1952).

A minority of jurisdictions do not require the prior felony conviction to precede commission of the principal offense, often because the language of their habitual offender statute does not expressly require it. These jurisdictions permit a prior felony to enhance the sentence for the principal

offense so long as the prior felony conviction precedes the conviction or sentencing in the principal offense. *See, e.g., Cornwell v. United States*, 451 A.2d 628, 629–630 (D.C.App.1982); *Washington v. State*, 273 Ark. 482, 621 S.W.2d 216, 217–218 (1981); *Jordan v. State*, 383 So.2d 495, 497 (Miss.1980); *State v. Hannah*, 126 Ariz. 575, 617 P.2d 527, 528 (1980).

Among the jurisdictions adopting the majority rule, the language of the particular habitual offender statute sometimes calls explicitly for prior felony convictions to precede commission of the principal offense, *see Midell, supra,* but other times the statutory language is inconclusive and the court still adopts the majority rule, *see Ellis, supra.* Cases applying the majority rule sometimes point out that whatever the wording of the habitual criminal statute, the manifest intent of such statutes to discourage recidivism supports the conclusion that they should have no application if the offender has not been *convicted* of the prior felony *before* committing the principal offense.

> Regardless of the particular phraseology of repeater statutes, their inherent purpose is to serve as a warning to first offenders. The infliction of more severe punishment for a repeater is based upon his persistent violation of the law *after conviction* for previous infractions.

*State v. Midell,* 162 N.W.2d at 59 (emphasis added). An offender who commits two felonies, but who has not been convicted of the first before committing the second, "has hardly been through a 'revolving door.'" *United States v. Balascsak,* 873 F.2d at 682. "We believe that the purpose of enacting the habitual criminal statute is to serve as a warning to previous offenders[.]" *State v. Ellis,* 333 N.W.2d at 394.

Conversely, some jurisdictions adhering to the minority rule do so not only because their habitual offender statutes are vague on the point, but also because they find that deterrence of convicted first offenders is not the dominant purpose of their statute. *See e.g., Washington v. State, supra; State v. Hannah, supra.*

Whether a prior felony conviction must precede the commission of the principal offense in order to enhance the sentence for the principal offense is a question of first impression under South Dakota's habitual offender statute at SDCL ch. 22–7. In *State v. Myers,* 346 N.W.2d 436, 437 (S.D.1984), this court held that SDCL ch. 32–23 permitted an enhanced DWI sentence based on a previous DWI conviction which occurred after the commission of the principal offense. However, that case is not controlling precedent here because the statutory scheme of the DWI repeat offender law at SDCL §§ 32–23–3 to 32–23–4.6 differs from the felony habitual offender law at SDCL ch. 22–7. Unlike SDCL 22–7–7 which requires that a defendant be *"convicted* of one or two prior felonies" (emphasis added), the less explicit language of SDCL 32–23–3 provides enhanced punishment simply "[i]f conviction for [DWI] is for a second offense[.]" The particular statute construed in *Myers* was SDCL 32–23–4.1, which excluded from consideration *stale* DWI convictions occurring more than five years *before* the principal offense. The holding of *Myers* was that this statute did not also exclude from consideration *recent* DWI convictions occurring *after* the principal offense. Despite the narrowness of the holding, two of five justices dissented. *Id.* at 438 (Wollman, J. and Henderson, J., concurring in part, dissenting in part).

In a case on point with *Myers,* the Wisconsin Supreme Court also permitted an enhanced DWI sentence based on a previous DWI conviction which occurred after the commission of the principal offense, even though such a result would be impossible under Wisconsin's felony habitual offender law. *State v. Banks,* 105 Wis.2d 32, 313 N.W.2d 67 (1981). The court based its decision on a similar difference in language between Wisconsin's DWI statute and its habitual offender statute. The court also noted a fundamental difference in legislative intent underlying the two statutory schemes:

> The conclusion that the legislature intended the [repeat DWI penalties] to be applied to a driver who repeatedly violates [the DWI law], regardless of the

sequence of offenses is consistent with the recognized nationwide and state legislative objective of removing drunken drivers from the highways.... This court has recognized that the purpose of *general* repeater statutes is to increase the punishment of persons who fail to learn to respect the law *after* suffering the initial penalties and embarrassment of *conviction.*

313 N.W.2d at 74–75 (emphasis added).

While SDCL 22–7–7 requires a prior conviction, it does not expressly state what the conviction must precede. Since the subject of the crucial portion of SDCL 22–7–7 is "the sentence for the principal felony," the state urges that the prior conviction need only precede the sentence in the principal offense.

Nevertheless, we hold with the majority of jurisdictions that South Dakota's habitual offender statute requires that the prior felony conviction precede the *commission* of the principal offense, and not just the sentence for the principal offense. We do so for five reasons:

(1) SDCL 22–7–11 requires that the habitual offender information be filed "at the time of, or before" the defendant's *arraignment.* This clearly precludes the interpretation that SDCL ch. 22–7 permits consideration of prior convictions obtained anytime before sentencing in the principal offense. From the face of the statute, we know that the prior felony conviction must at least precede arraignment in the principal offense.

(2) In *State v. Layton,* 337 N.W.2d 809, 816 (S.D.1983), this court indicated that the available sanctions under our habitual offender statute are directed to cases in which rehabilitation has not worked. We said: "[O]ur habitual offender statute[ ] operates to protect society from the individual who, through his continued felonious conduct, exhibits that efforts of rehabilitation have failed." Because rehabilitation efforts do not generally begin until after conviction, this implies the kind of post-conviction legislative purpose which is

the primary rationale for the majority rule.

(3) This court's language in *State v. Grooms,* 339 N.W.2d 318, 320 (S.D.1983) (*Grooms II*), is also consistent with the majority rule: "The purpose of the habitual offender statute (SDCL ch. 22–7) is to allow the trial court to enhance a convicted felon's sentence if the State can prove that the defendant *had already been* convicted of prior felonies." The use of the past perfect tense implies "had already been convicted of prior felonies" *at the time the principal offense was committed.*

(4) Requiring prior felony convictions to precede commission of the principal offense promotes certainty and uniformity in the application of the habitual offender statutes, and eliminates any temptation on the part of the state to play games with the scheduling of an arraignment or a sentencing in order to obtain an enhancement.

(5) Finally, to the extent that this remains a close question, the applicable rule of construction resolves the ambiguity in the statute. "The habitual offender act is a highly penal enactment and, therefore, it should be strictly construed and applied." *State v. Grooms,* 339 N.W.2d at 320 (citing *State v. Alexander,* 313 N.W.2d 33 (S.D.1981); *Black v. Erickson,* 86 S.D. 86, 191 N.W.2d 174 (1971); *State v. Jameson,* 80 S.D. 333, 123 N.W.2d 300 (1963)). A habitual criminal statute "should be strictly construed, such a statute being in derogation of the common law.... [T]he court has been said to be inclined to adopt that construction which operates in favor of life or liberty." 24 C.J.S. *Criminal Law* § 1639 (1989). *See also State v. Layton,* 337 N.W.2d at 814.

We hold that defendant's sentence in the principal offense of aggravated assault could not be enhanced under SDCL ch. 22–7 by his prior conviction for witness-tampering because his conviction for the prior felony was subsequent to his commission of the principal offense. We reverse and

remand to the circuit court for re-sentencing consistent with this opinion.

Defendant additionally argues that his conviction of the prior felony did not occur on January 25, 1990, when a jury found him guilty of witness-tampering, but one month later when he was sentenced. Defendant and state also dispute the effect of his ongoing appeal of the prior felony conviction for purposes of sentence enhancement in the principal offense. Because we have determined that defendant's prior conviction was not available to the court for sentencing enhancement, we need not reach these two sub-issues. Likewise, we need not reach defendant's final contention that his 25-year sentence for aggravated assault violated his constitutional right against cruel and unusual punishment.

We affirm on Issue 1, and reverse and remand for resentencing on Issue 2.

MILLER, C.J., and WUEST and AMUNDSON, JJ., concur.

HENDERSON, J., specially concurs.

HENDERSON, Justice (specially concurring).

### ISSUE ONE

In joining the majority on issue one, I do not wish to forsake my dissent in *State v. Likness*, 386 N.W.2d 42, 46 (S.D.1986). Therein, five reasons were expressed for the rule forbidding more than one crime being charged in a single count:

(1) To assure that the person charged is sufficiently notified of the charge;

(2) To protect that person so charged against double jeopardy;

(3) To avoid prejudice and confusion which would naturally arise as evidentiary rulings are required during trial;

(4) To assure that the person charged is sentenced only for the crime charged; and lastly,

(5) To guarantee jury unanimity.

This position is supported by *United States v. Alsobrook*, 620 F.2d 139 (6th Cir.1980),

*cert. denied*, 449 U.S. 843, 101 S.Ct. 124, 66 L.Ed.2d 51 (1980).

Gehrke recognizes in his brief that SDCL 22–18–1.1 is written in the disjunctive. In *Kleinsasser*, cited by the majority opinion, you will find this additional statement:

> ... it has been held to be fatal to charge disjunctively in the words of the statute if the disjunctive in the averment leaves it uncertain which of the several alternatives is meant. [Footnotes omitted] 41 Am.Jur.2d Indictments and Informations, Section 96, page 939.

> An indictment or information should not charge a party disjunctively, so as to leave it uncertain what is relied on as the accusation against him, *unless such form of indictment is authorized by statute, as where the disjunctive offenses are of the same character and subject to the same punishment.* [Footnote omitted] *Id.* at Section 214, page 1012. (emphasis supplied mine).

The disjunctive language was, in this case, taken directly from the statute. But here, most importantly, to avoid any transgression of (1) and (2) cited above, Gehrke was actually and formally charged with physically assaulting the officer by fist and foot. Gehrke knew, ab initio, the offense of which he was charged and so did the jury.

### ISSUE TWO

Do special writings or dissents serve a purpose? [*]

Justice Wollman's dissent in *Myers*, in which I joined, establishes that they accomplish—a good purpose—oftentimes.

Lest there be any watered-down version of the purport of his writing, regarding the enhancement issue, I quote the pertinent part of it:

> I do not agree, however, with the holding that the September 2, 1981, conviction could be used to enhance the penalty for a conviction resulting from an offense that occurred prior to the September 2, 1981, conviction. SDCL 32–23–4.1

---

[*] Foolish are those who believe they only engender strife. Their seed does bear fruit—sometimes.

speaks of convictions occurring prior to the date of the violation being charged, not to the date of the plea or conviction on the currently charged violation.

This dissent still finds favor with me and I cannot outright concur herein as the majority seeks to (a) use it, obliquely, as an expression of some kind of authority but (b) disregard it by attempting to distinguish it and (c) use a Wisconsin Supreme Court case, with approval, which would contravene Justice Wollman's writing which I joined in 1984 and still believe in.

*Layton,* a 1983 unanimous opinion, authored by this special writer, and *Grooms,* a 1983 unanimous opinion authored by my departed and beloved colleague, Justice Dunn, charted the road for the majority's decision on issue two. Those two decisions begot the underpinning for the primary rationale of the majority decision and, thus, stare decisis in South Dakota upon which this case is now founded, thereby following the majority of the decisions in the United States. From Isaiah 28:9–10, it is learned: "Whom shall he teach knowledge? And whom shall he make understand doctrine? Those who are weaned from the milk, and drawn from the breasts? For precept must be built upon precept, precept upon precept; line upon line, line upon line; here a little, and there a little." So, likewise, it is in the legal world. Law is a learning, building process.

Essentially, I agree, quite simply, upon the premise that Gehrke was sentenced under the habitual offender statute, SDCL 22-7-7, when it did not apply to him. He must be resentenced as a first offender.