STATE of South Dakota, Plaintiff
and Appellee,

v.

John Walter GEHRKE, Defendant
and Appellant.

No. 17727.

Supreme Court of South Dakota.

Considered on Briefs May 28, 1992.

Decided Sept. 9, 1992.

Rehearing Denied Oct. 22, 1992.

Mark Barnett, Atty. Gen., Patricia Cronin, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Allen J. Eide, Gribbin, Burns & Eide, Watertown, for defendant and appellant.

WUEST, Justice.

This is the second appeal brought by Defendant John W. Gehrke from the sentence imposed upon his conviction of aggravated assault. Gehrke was initially sentenced to twenty-five years. He appealed, and we affirmed his conviction for aggravated assault, but reversed the sentence because the habitual offender statute had been improperly applied to enhance Gehrke's sentence. *State v. Gehrke*, 474 N.W.2d 722 (S.D.1991). On remand, the trial court resentenced Gehrke to the maximum prison term for aggravated assault— fifteen years. Gehrke appeals alleging the sentence constitutes cruel and unusual punishment. We affirm.

The facts are set out in the first opinion, *Gehrke*, 474 N.W.2d at 722–23, to which we refer the reader. We restate only those facts necessary to decide this appeal.

On January 8, 1990, while awaiting trial on two separate felony charges—tampering with a witness and intentional damage to property—Gehrke was found intoxicated in a parked pickup truck by South Dakota Highway Patrol Officer Frank Krumm. Gehrke had a loaded .22 caliber rifle under the seat. After Officer Krumm placed Gehrke under arrest for driving while intoxicated, against the officer's order, Gehrke returned to his pickup, started it and parked in the ditch. After Officer Krumm ordered Gehrke into his patrol car, Gehrke punched the officer. The blow caused Officer Krumm's jaw to become sore and swollen, and he developed a headache.

Officer Krumm called for assistance. Gehrke then charged at Krumm, verbally threatening to do further physical harm. At this time, Gehrke's fists were clenched and he challenged Krumm to fight. Gehrke continued to throw punches at the officer, none of which connected. Krumm kept his distance and awaited the arrival of assistance. When assistance arrived, Gehrke was handcuffed. After the officers loosened a handcuff which had become too tight, and as the officers were placing Gehrke into the rear seat of Officer Krumm's patrol car, Gehrke kicked Officer Krumm in the stomach. While en route to jail, Gehrke kicked out a light in the patrol car and otherwise damaged the interior.

Gehrke was convicted of aggravated assault against a law enforcement officer, a class three felony punishable by a maximum sentence of fifteen years in the South Dakota State Penitentiary and a $15,000 fine. SDCL 22–18–1.1(3) (1988); SDCL 22–6–1 (1988). Gehrke argues his sentence is excessive and constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and Article VI, Section 23 of the South Dakota Constitution.

At resentencing, Gehrke introduced statistics which indicated: the mean (average) sentence of those serving time in the South Dakota State Penitentiary for aggravated assault was 8.079 years; the medium sentence being 8.25 years; and the mode (most common) sentence being 10.0 years. Gehrke also presented evidence the maximum penalty for the same crime against a police officer: (1) in Minnesota is a year and a day in prison or a fine of $3,000, or both and (2) in Montana is ten years in prison or a $50,000 fine, or both.

This court gives great deference to sentencing decisions made by trial courts. *State v. Weiker (Weiker II)* 366 N.W.2d 823, 828 (S.D.1985) (citing *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980)). Moreover, not every felony sentence will be subjected to exhaustive review. *Weiker II*, at 827. *Accord State v. Reed*, 451 N.W.2d 409, 410 (S.D.1990). We have previously relied on language set out in the United States Supreme Court decision in *Helm v. Solem:*

[W]e do not adopt or imply approval of a general rule of appellate review of sentences. Absent specific authority, it is not the role of an appellate court to substitute its judgment for that of the

sentencing court as to the appropriateness of a particular sentence; rather, in applying the Eighth Amendment the appellate court decides only whether the sentence under review is within constitutional limits. In view of the substantial deference that must be accorded legislatures and sentencing courts, a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate.

*Weiker II*, 366 N.W.2d at 827. (quoting *Solem v. Helm*, 463 U.S. 277, 290, n. 16, 103 S.Ct. 3001, 3009 n. 16, 77 L.Ed.2d 637, 649 n. 16 (1983)). *Accord State v. Myers*, 411 N.W.2d 402, 403 (S.D.1987). We recognize, " '*successful* challenges to the proportionality of particular sentences will be exceedingly rare.' " *Weiker II*, 366 N.W.2d at 827 (quoting *Helm*, 463 U.S. at 289–90, 103 S.Ct. at 3009, 77 L.Ed.2d at 649).

■ "On appeal, we first determine whether the sentence 'shocks the conscience' or is so disproportionate to the crime that it activates the Eighth Amendment 'within and without jurisdiction' proportionality tests...." *State v. Lykken*, 484 N.W.2d 869, 879 (S.D.1992); *State v. Basker*, 468 N.W.2d 413, 418 (S.D.1991). *Accord State v. Andrews*, 393 N.W.2d 76, 82–83 (S.D.1986); *Weiker II*, 366 N.W.2d at 827. "Absent a sentence which is so excessive in duration that it shocks the conscience of the court, it is well settled in South Dakota that a sentence within statutory limits is not reviewable on appeal." *Lykken*, 484 N.W.2d at 879; *State v. Janssen*, 371 N.W.2d 353, 356 (S.D.1985) (citing cases). Stated alternatively, we will only engage in extensive review of a sentence where we have first determined the sentence was manifestly disproportionate to

the crime. *State v. Holloway*, 482 N.W.2d 306, 310–311 (S.D.1992); *Weiker II*, 366 N.W.2d at 827. "If a sentence is manifestly disproportionate to the crime, [in light of the gravity of the offense and harshness of the penalty].... then the other two factors listed in *Helm* [sentence imposed on others in the same jurisdiction and in other jurisdictions] become more focused and require extensive review." *Weiker II*, 366 N.W.2d at 827.[1] *See also Helm*, 463 U.S. at 292, 103 S.Ct. at 3011, 77 L.Ed.2d at 650.

This procedure was recently approved by a plurality of the United States Supreme Court in *Harmelin v. Michigan*, 501 U.S. ——, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (plurality). In *Harmelin*, five justices agreed Michigan's mandatory sentence of life imprisonment without possibility of parole for the offense of possessing 672 grams of cocaine did not constitute cruel and unusual punishment in violation of the Eighth Amendment. Justice Scalia, joined by Chief Justice Rehnquist, concluded the Eighth Amendment contains no proportionality guarantee outside of death penalty cases and, therefore, *Helm* should be overruled. *Id.*, 501 U.S. at ——, 111 S.Ct. at 2696, 115 L.Ed.2d at 858. Justice Kennedy, joined by Justice O'Conner and Justice Souter, recognized in noncapital cases the cruel and unusual punishment clause encompasses a "narrow proportionality principle." *Id.*, 501 U.S. at ——, 111 S.Ct. at 2702, 115 L.Ed.2d at 866. After setting forth four principles gleaned from Supreme Court decisions,[2] Justice Kennedy concluded: "[t]he Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate to the crime.' " *Id.* 501 U.S. at ——, 111 S.Ct. at 2705, 115 L.Ed.2d at 869

---

1. In *Weiker II* we noted:

   This procedure will likely prevent the 'floodgates from opening,' as was heralded by the State. Courts will not need to accept vast statistical information at every sentencing hearing. It will also relieve this Court from the impossible task of reviewing for proportionality one term of years, as opposed to shorter or longer terms.

   *Id.*

2. Those principles are: (1) reviewing courts must grant substantial deference to the legislature's broad authority to determine the types and limits of punishment; (2) the Eighth Amendment does not mandate adoption of any one phenological theory; (3) marked divergences "are the inevitable, often beneficial result of the federal structure"; and (4) proportionality review by federal courts should be informed by objective factors. *Id.*, 501 U.S. at —— ——, 111 S.Ct. at 2703–04, 115 L.Ed.2d at 867–68.

(quoting *Helm,* 463 U.S. at 288, 303, 103 S.Ct. at 3008, 3016, 77 L.Ed.2d at 647, 657).

Further, Justice Kennedy stated the crime of possession of more than 650 grams of cocaine was of sufficient severity that no comparative analysis was necessary, concluding "intra- and inter-jurisdictional analyses are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Id.,* 501 U.S. at ——, 111 S.Ct. at 2707, 115 L.Ed.2d at 871. "The proper role for comparative analyses of sentences, then, is to validate an initial judgment that a sentence is grossly disproportionate to a crime." *Id.,* 501 U.S. at ——, 111 S.Ct. at 2707, 115 L.Ed.2d at 872.

■ This analysis is consistent with previous decisions where we have held we must first determine whether the sentence "shocks the conscience" or is so disproportionate to the crime as to trigger the "within and without jurisdiction" proportionality test. *Lykken,* 484 N.W.2d at 879; *Holloway,* 482 N.W.2d at 310; *Basker,* 468 N.W.2d at 418. We have set out a two-part test to determine whether a sentence is so constitutionally offensive as to shock the conscience: First, whether the punishment is so excessive or cruel " 'as to meet the disapproval and condemnation of the conscience and reason of men generally[,]' " and second, "whether the punishment is so excessive or so cruel as to shock the collective conscience of this court." *State v. Shilvock–Havird,* 472 N.W.2d 773, 779 (S.D.1991) (citing *Reed,* 451 N.W.2d 409; *State v. Phipps,* 318 N.W.2d 128 (S.D. 1982)).

■ Gehrke's acts of aggression against Officer Krumm were a cumulation of conduct on the part of Gehrke demonstrating his ongoing lack of respect for authority. At the initial sentencing hearing, in May 1990, the trial court specifically noted on the record it had reviewed Gehrke's presentence investigation report and was particularly struck by his record. In the court's view, Gehrke lacked emotional maturity

and believed he did not have to obey authority. The court also pointed to Gehrke's witness tampering conviction, which evidenced his effort to thwart the judicial process.

At the re-sentencing hearing on September 25, 1991, the court again noted the particular details contained in the presentence investigation report. This report is replete with details of Gehrke's brushes with the law, including several instances when he willfully refused to obey court protection orders obtained by his ex-wife. It is apparent from the report Gehrke did exactly what he wanted, without regard for the law. Such arrogance was shown by Gehrke on January 8, 1990, when he refused to obey Officer Krumm's instructions to remain in the patrol car after having been arrested.

In addition, Gehrke's arrogant attitude was usually displayed through acts of aggression. When Gehrke violated the protection orders, he would often become involved in verbal or physical altercations, which usually resulted in charges being brought against him. For example, in August of 1986, Gehrke was charged with disturbing the peace and intentional damage to property because he struck the hood of a police car after the officer called to the scene reminded Gehrke of the restraining order and asked him to leave. Gehrke violated the protection order repeatedly, including one instance where he forced entry into his ex-wife's home by breaking the back door. On another occasion, he was charged with simple assault for throwing a glass at his ex-wife, hitting her in the neck.[3]

Gehrke had a previous run-in with Officer Krumm, during which Gehrke's actions were abusive and threatening. In a 1988 incident, Gehrke was stopped by a law enforcement officer for exhibition driving. The officer requested assistance and Officer Krumm responded. When the officers attempted to handcuff Gehrke and transport him to jail, he became very abusive

---

**3.** Included in the presentence investigation report is an incident where Gehrke was convicted

of cruelty to animals for stomping on the heads of three puppies, crushing their skulls.

and threatened Officer Krumm. Gehrke's contact with Officer Krumm on the night of January 8, 1990, went beyond threats. This time Gehrke carried out his verbal threats by punching Officer Krumm in the face and kicking him in the stomach.

Gehrke's behavior clearly shows he is unimpressed with the criminal justice system. Even though he was awaiting trial on two separate felony charges—witness tampering and intentional damage to property—he drove a vehicle while intoxicated, and then assaulted a police officer. Based upon Gehrke's persistent antagonism toward authority, and law enforcement officers in particular, coupled with his *increasing* history of aggression, it is apparent Gehrke has little hope for immediate rehabilitation. *See Lykken,* 484 N.W.2d at 880.

Evidence was presented at the second sentencing hearing that Gehrke has taken some positive steps towards rehabilitating himself. It is unfortunate this has occurred so late. Gehrke has had several run-ins with the law and has had many chances to reform his behavior. If he finally succeeds, he may apply for parole and will be eligible for "good time." SDCL 24–15–5 (1988); SDCL 24–5–1 (1988).

■ Incapacitation and deterrence are valid goals of sentencing. *Harmelin,* 501 U.S. at ——, 111 S.Ct. at 2704, 115 L.Ed.2d at 868. The legislature, with the legitimate goal of deterrence in mind, enacted SDCL 22–18–1.1(3) in order to clothe with protection those who by virtue of their status as law enforcement officers have been pressed into service. *State v. Feyereisen,* 343 N.W.2d 384, 387 (S.D.1984); *State v. Winckler,* 286 N.W.2d 313, 314 (S.D.1979). Based upon all the circumstances presented in this case, the trial court's imposition of the maximum sentence allowed within statutory limits was not so excessive or cruel as to shock the conscience of this court or of men generally, and is not grossly disproportionate to the crime committed. There is no need, therefore, for this court to reach a proportionality analysis. *Lykken,* 484 N.W.2d at 880; *Basker,* 468 N.W.2d at 418.

■ Even were we to reach the within and without jurisdiction proportionality review, we could not conclude Gehrke's sentence violates the Eighth Amendment or Article VI, Section 23 of South Dakota's Constitution. Gehrke submitted statistics regarding aggravated assault sentences being served in the South Dakota State Penitentiary. Gehrke's statistics do not detail the facts on which the compared sentences are based. *See* discussion in footnote 1 *supra.* Moreover, the comparisons reveal the most common sentence imposed for aggravated assault is ten years (nineteen out of 106 sentences). Of the 106 sentences surveyed at the penitentiary, nineteen were as severe or more severe than Gehrke's. Moreover, the record is not sufficiently developed to conduct an inter-jurisdictional review. *See Holloway,* 482 N.W.2d at 311; *State v. Rederth,* 376 N.W.2d 579, 581 (S.D.1985), *appeal dismissed,* 475 U.S. 1078, 106 S.Ct. 1452, 89 L.Ed.2d 711 (1986). Gehrke submitted the statutes of only two states concerning the maximum sentence for assaulting a police officer: Minnesota (not more than one year and one day or a fine of $3,000, or both) and Montana (not to exceed ten years or a fine of $50,000, or both). It is possible other jurisdictions have more stringent penalties applicable to the same crime. Given the facts of this case, we cannot conclude the sentence was "grossly disproportionate" to the crime committed. *Harmelin,* 501 U.S. at ——, 111 S.Ct. at 2707, 115 L.Ed.2d at 872.

We affirm.

MILLER, C.J., and SABERS and AMUNDSON, JJ., concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

In *Lykken,* upon which the majority relies, there were no supporting statistics, studies or data submitted, as I reflected in my special writing therein. *Lykken* is therefore absolutely inapposite.

In *Holloway,* upon which the majority also relies, I dissented to a sentence which was shocking to the conscience of men generally. *State v. Bad Heart Bull,* 257

N.W.2d 715, 720 (S.D.1977). There, a young Indian lad was sentenced to 146 years. Subsequent to our decision, Circuit Judge Hurd, in a very publicized hearing in Minnehaha County, *see*, Argus Leader article dated May 27, 1992, cut 46 years from Holloway, reflecting to the general public that his sentence was excessive. "I feel I acted too tough," Judge Hurd said during the sentence modification hearing that he requested. "I usually don't second-guess myself." Our decision of March 11, 1992, did not survive. Therefore, it is also inapposite.

This Court has never spiritually recognized the proportionality rule in *Solem v. Helm*, cited by the majority opinion. Why? This Court's majority opinion was reversed in *State v. Helm*, 287 N.W.2d 497 (1980); a case in which I dissented vigorously. Repeatedly, this Court has skirted the ruling in *Solem*.

*Harmelin* is cited by the majority opinion for ostensible authority for its position. It is obvious that the Justices of the Supreme Court of the United States strongly disagree on this legal point: Is proportionality encompassed within the Eighth Amendment? Chief Justice Rehnquist and Justice Scalia contend that it is not; therefore, those gentlemen would reverse *Solem*. Justices Kennedy, O'Connor, and Souter disagree and hold that *Solem* is good law. Justices White, Blackman and Stevens supported *Solem* but disagreed with the result in the *Harmelin* case. Like it or not, by this Court, at least six United States Supreme Court Justices continue to believe in *Solem*. Continue to watch this legal saga. Count on it. This Court will continue to kick and flog and skirt the proportionality analysis in *Solem*. Our Court, if it had its way, would observe the old rule in *State v. Huettl*, 379 N.W.2d 298, 303 (S.D.1985) that the trial courts have broad discretion to fix sentences within statutory limits. Therefore, we would review the imposed punishment in a limited, restricted viewpoint, namely: Did the trial court abuse its discretion? *State v. Phipps*, 318 N.W.2d 128, 132 (S.D.1982). Conveniently *Solem* would be disregarded and the proportionality analysis. This

Court has never found a sentence to be disproportionate, with exception of *State v. Weiker (Weiker I)*, 342 N.W.2d 7, 11 (S.D. 1983).

As is noted in the majority opinion, Gehrke was before us in an appeal in 1991. He was the recipient of a raw deal on sentencing then and we reversed. We now witness a second raw deal. Note that Henderson, J., specially concurred, noting inter alia:

> Essentially, I agree, quite simply, upon the premise that Gehrke was sentenced under the habitual offender statute, SDCL 22–7–7, when it did not apply. *He must be resentenced as a first offender* (emphasis added mine).

In *Weiker I*, Justice Morgan wrote for this Court:

> A punishment is unconstitutional if it (1) makes no measurable contribution to acceptable goals of punishment and hence is nothing more than the pointless infliction of suffering; or (2) is grossly disproportionate to the severity of crime. Citing standards for excessive punishment in *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).

In *Weiker II*, proudly cited by the majority, I vigorously dissented. In *Weiker II*, we affirmed even though the sentencing judge expressly violated the mandate of our decision in *Weiker I*. Unbelievable. If you students of the law—and you academicians have time—read the authorities set forth in my dissent in *Weiker II*. In my dissent (which I still hold to), I expressed, inter alia, at 830:

> ... [I]mprisonment is not calculated to be brutal or to destroy mankind but is established to protect society and rehabilitate the offender so that once again he can breathe the air of a free man.

Let us review the words of Mr. Justice Powell of the United States Supreme Court in a specially concurring opinion in *Hutto v. Davis* 454 U.S. 370, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982), and as further found in 30 *Criminal Law Reporter* 4159, 4160 (1982):

Yet, our system of justice always has recognized that appellate courts do have a responsibility—expressed in the proportionality principle—not to shut their eyes to grossly disproportionate sentences that are manifestly unjust.

*Hutto,* 454 U.S. at 377, 102 S.Ct. at 707, 70 L.Ed.2d at 562 (emphasis in original).

Again, Mr. Justice Powell expresses:

Sentencing disparity in our country primarily results not from varying statutory limits among the States. Rather, in a nation of our size and with the sentencing decision in particular cases vested— as it should be—in trial courts, a good deal of disparity is inevitable. Effort to minimize this, at least on a state-by-state basis, certainly should be continued. *Hutto,* 454 U.S. at 380, 102 S.Ct. at 709, 70 L.Ed.2d at 564.

I do not wish to shut my eyes and I do wish that the State of South Dakota would minimize disparity in sentencing. Before launching into an examination of disparity, testimony below disclosed at a resentencing hearing that Gehrke (1) had grown spiritually (2) was taking responsibility of his actions (3) was genuinely working through his problems (4) was working hard in the state penitentiary (5) was taking courses and (6) had received five separate certificates of completion in courses he studied at the institution. Now in my 14th year of service on this Court, I have witnessed the demise of one state supported college to establish thereat a new "correctional facility." Why? Because our State Penitentiary was crowded beyond its capacity. Another religious based college has been turned into a correctional facility for federal prisoners. In addition, other privately financed (for profit) facilities have sprung up in this state to warehouse other state prisoners. It seems that educational facilities are dying in South Dakota and walls and fences of confinement have been substituted in their place. This is a sad commentary on society and social justice. In DELIVERY OF JUSTICE, The College of William and Mary Press, Marshall–Wythe School of Law and West Publishing Co., 1990, former Chief Justice Warren E. Burger, at page 309 expresses:

In part the terrible price we are paying in crime is because we have tended— once the drama of the trial is over—to regard all criminals as human rubbish. It would make more sense, from a coldly logical viewpoint, to put all "rubbish" into a vast incinerator than simply store it in warehouses for a period of time, only to have most of the subjects come out of prison and to return to their old ways. Some of this must be due to our failure to try—in a really significant way—to change these men while they are confined. We lawyers and judges sometimes tend to fall in love with procedures and techniques and formalism. The imbalance in our system of criminal justice must be corrected so that we give at least as much attention to the defendant after he is found guilty as before. We must examine into the causes and consequences of the protracted warfare our system of justice fosters. Whether we find it palatable or not, we must proceed, even in the face of bitter contrary experiences, in the belief that every human being has a spark somewhere hidden in him that will make it possible for redemption and rehabilitation. If we accept the idea that each human, however "bad," is a child of God, we must look for that spark.

From my reading herein, it appears from the evidence that Gehrke has that "spark."

Earlier, I expressed Gehrke got a "raw deal." The Eighth Amendment to the United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed nor cruel and unusual punishments inflicted. In *Solem v. Helm,* it was held that felony sentences must be proportionate to the offense. South Dakota has a similar state constitutional provision, South Dakota Constitution Art. VI, § 23. Decisional law in South Dakota reflects that challenges to sentences are rare. *See State v. Myers* cited in majority; however, *see also Weiker II* at 826 reflecting that no sentence is *per se* constitutional. Yes, this Court has a duty to look behind these sentences to determine if they are

excessive or disproportional. Gehrke's sentence is both.

In determining if a sentence is unconstitutional under an Eighth Amendment analysis, a two-part test is used. First, the Court must find that the sentence "shocks its conscience" or is so disproportionate that it activates the Eighth Amendment. After that circumstance is found, then the sentence must be considered in light of other sentences in the same jurisdiction and allowable sentences for similar offenses in other jurisdictions. *State v. Dale*, 439 N.W.2d 98, 111 (S.D.1989).

With the threshold question under Eighth Amendment analysis and considering the lesson of *Weiker I*, let us again consider Mr. Gehrke's offense. Trooper Krumm testified that he felt no pain when the defendant kicked him and that he wasn't hurt at all. In connection with the blow to Krumm's chin, he said that he had a sore jaw and later he had a headache. Although he was at a hospital for the defendant's blood test when the pain from his jaw was most severe, with other officers present, he had neither a doctor nor a nurse look at his jaw. No weapon was used. Repeated blows were not struck. Defendant was handcuffed and in the immediate presence of two other officers when he kicked Krumm. The events were spontaneous, rather than premeditated. Mr. Krumm had handcuffed the defendant too tightly before the kicking. No, Gehrke should not have acted as he did, but this was not so egregious that the 15 year maximum sentence had to be imposed.

Should not *maximum* sentences be imposed upon perpetrators of the *most* serious offenses? Yes, this seems logical and fair. Does it not make common sense that as the severity of the deed increases—that the sentence (penalty for the act) should increase? Yes—for this is the very essence of proportionality. Gehrke was intoxicated, he was not lying in ambush for this officer. When he was handcuffed too tight, with his hands behind his back, he surely over-reacted; so, also, in my opinion, did the trial court. This assault upon an officer was not justified but it took place in the presence of two other officers. This case arose in the Third Circuit of this state, Judge Martin presiding. Statistics, duly presented by showing below, are instructive:

| | |
|---|---|
| Average sentence (per count) to be served in four counties of Third Circuit | 2.71 years |
| Average sentence (per count) in four counties of Third Circuit, excluding suspended imposition of sentence cases | 4.09 years |
| Average sentence (per count) in four counties of Third Circuit, in which defendant went to prison | 5.31 years |
| Suggested sentence in this case | 5.5 years |
| Mean sentence of those serving time in SDSP on Sept. 3, 1991 for aggravated assault, whose sentences were within the range of sentences for first offenders | 8.079 years |
| Median sentence of those serving time in SDSP on Sept. 3, 1991 for aggravated assault, whose sentences were within the range of sentences for first time offenders | 8.25 years |
| Mode of sentences of those serving time in SDSP on Sept. 3, 1991 for aggravated assault, whose sentences were within the range of sentences for first time offenders | 10.0 years |
| Maximum possible sentence (that imposed upon Gehrke) | 15.0 years |

In my opinion, the disproportionality of Gehrke's sentence is obvious and unmistakable. Gehrke was treated with disparity. We cannot have disproportionate sentences all over the state of South Dakota. Our Supreme Court in this state owes a duty to review these sentences to make sure they are meted out even-handedly. I fully appreciate that each case stands upon its own set of facts; further, I appreciate sentences cannot be uniform; but, surely, as the highest Court in this state, we have a duty to see that sentences have a reasonable relation to one another. If this Court does not take a leadership role in sentencing in this state, South Dakota will see more educational institutions turned into prisons. That kind of "order" is not acceptable to a free people.

As Justices of this Court, we are trustees of fairness. Gehrke's sentence was not fair. Various sentencings, within the Third Circuit, reflect that Judge Martin's sentence was excessive, disproportionate to other aggravated assault sentences.

In addition to the Third Circuit judgments, statistics were introduced below to reflect that this 15 year maximum sentence was not in keeping with the proportionality review concept. Let it be clearly understood that I do not deny Gehrke needed punishment; it is the degree of punishment in which I differ. Evidence at the resentencing hearing on September 25 consisted of several exhibits and three witnesses, all on behalf of the defendant. Exhibit 1 was a computer print-out of the sentences of inmates serving time for aggravated assault at the South Dakota State Penitentiary on September 3, 1991, including Mr. Gehrke; Exhibit 1A was a statistical summary of Exhibit 1; and Exhibit 1B was the same information in the form of a graph.

Of the 98 inmates serving sentences within the range of the sentence which Mr. Gehrke could receive, up to 15 years, the mean of the sentences being served was 8.079 years, just less than 8 years 29 days. The median sentence was 8.25 years (8 years 3 months), and the mode, the most common sentence, was ten years. In other words, under two of three most common ways of calculating averages, the "average" sentence of prisoners serving time in South Dakota for this offense in early September, 1991 was just over 8 years.

Under a cold analysis of this record, statistics reveal Gehrke's sentence was beyond the pale of sound discretion. Trial court abused its discretion. *State v. Reed,* 451 N.W.2d 409, 410 (S.D.1990). We, on this Court, should intervene. An epitome of over-reaction blankets the sentencing. Objectivity was forsaken. Sister states, i.e., Montana and Minnesota, when maximum sentences are compared, do not reflect a sentence as tough as this one by a considerable margin. Finally, this defense lawyer produced the statistics and data to win this appeal. Beautiful job. But he loses this appeal. Why? Not by or in law, my legal brethern; rather by statist mind set. Yes, the same mind set which has created new confinement/prison/correctional facilities (more mortar and bricks to imprison) and fewer colleges.

Therefore, I dissent.