**STATE of South Dakota, Plaintiff and Appellee,**

**v.**

**Garrett WOUNDED HEAD, Defendant and Appellant.**

**No. 13140.**

Supreme Court of South Dakota.

Argued Jan. 8, 1981.

Decided May 6, 1981.

---

**4.** See SDCL 23A–3–2(1).

Lori S. Wilbur, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

John T. Elston, Pennington County, Public Defender's Office, Rapid City, for defendant and appellant; Steven D. Rich, Pennington County, Public Defender's Office, Rapid City, on brief.

FOSHEIM, Justice.

This is an appeal from the judgment of conviction entered upon a jury verdict finding appellant guilty of attempted rape. We affirm.

On the evening of February 1, 1980, the complaining witness and her boyfriend rented a room at a Rapid City motel to have a drinking party. Several persons were present. The party continued until a fight broke out and the police were summoned. At that point, the complaining witness and one Jeffrey Janis left the party and proceeded on foot until they were picked up and taken to a house in the Star Village area of Rapid City. Shortly thereafter, the complaining witness left, but appellant followed her and brought her back to the house, assuring her that someone would drive her back to the motel. The drinking resumed and appellant made advances toward her; she broke a table while attempting to avoid him. Appellant then took her by the arms and forced her into a bedroom. He was unable to disrobe her, and called for assistance. Three men responded. The victim was thereafter subjected to repeated sexual assaults over a period of two to three hours.

The complaining witness' friend, Janis, did not respond to her calls for help. He went into the bedroom, under pressure from the others, and faked intercourse with the prosecutrix. While doing so, he gave her his pocketknife with instructions to feign illness in order to get to the bathroom, where she could cut a window screen and escape. This she managed to do. Janis was waiting outside. Together they climbed a fence and ran until they came upon a city

worker who radioed the police. He stated that the girl was then dressed only in a blouse or sweater and a towel wrapped around her waist. He and the police officers who arrived at the scene testified that the victim appeared shaken and frightened. Her other clothes were later found in the attic of the Star Village residence.

Appellant first contends that the trial court erred in its denial of his motion for a psychiatric examination of the complaining witness. Whether a psychiatric examination of the complaining witness in a sexual offense case should be ordered is within the sound discretion of the trial court and should be granted only upon a substantial showing of need and justification, which is not a light burden. *State v. Reiman*, 284 N.W.2d 860 (S.D.1979); *State v. Schweitzer*, 84 S.D. 384, 171 N.W.2d 737 (1969); *State v. Klueber*, 81 S.D. 223, 132 N.W.2d 847 (1965). The purpose of a psychiatric examination in cases involving sex offenses is to detect any mental or moral delusions or tendencies causing distortion of the imagination that would affect the probable credibility of the complaining witness. *State v. Reiman*, supra; *State v. Klueber*, supra. It is not necessary or advisable for courts, in all cases charging sex offenses, to order a psychiatric examination of the complaining witness. *State v. Klueber*, supra.

In this case, defense counsel requested and received several juvenile records of the complaining witness. Appellant's motion was based largely upon statements of juvenile counselors and court services workers contained in those records concerning the complainant's veracity and reliability. Defense counsel argued that a psychiatrist who examined such records had indicated they suggested a high probability that the prosecutrix tends to shift responsibility for her behavior to others.[1]

We are not persuaded that appellant made the required showing. The statements contained in the records were hear-say and conclusionary in nature and revolved around delinquency problems including a simple assault and a petition alleging the complaining witness to be a child in need of supervision. The affidavit submitted in support of appellant's motion consisted simply of defense counsel's conclusions. The trial judge properly characterized the records as "hearsay based on hearsay," and concluded that the statements contained in the records were speculative and did not provide the required substantial showing of need and justification.

Appellant, conceding that the records were hearsay and conclusionary, complains that the trial court's refusal to grant further discovery of the prosecuting witness' juvenile records was error because it denied access to facts essential to make the required showing. The trial court noted (and counsel conceded in oral argument) that such further discovery would have amounted to a "fishing expedition." We conclude that there was no abuse of discretion in the denial of appellant's motions for a psychiatric examination of the prosecutrix and for additional discovery of her juvenile records.

Appellant next contends that the trial court's refusal to allow cross-examination of prosecution witness Jeffrey Janis by use of the witness' juvenile records deprived him of his right of confrontation under the Sixth Amendment to the United States Constitution and Art. VI, § 7 of the South Dakota Constitution. Janis testified as to appellant's role in the events of February 1, 1980. He had been the subject of numerous juvenile adjudications, including two counts of grand theft auto and two counts of third-degree burglary, all of which would have been felonies had he been tried as an adult. At the time of trial, he was awaiting adjudication on an additional allegation of auto theft. A defense request to cross-examine the witness with regard to his four prior adjudications was denied. The trial court, however, granted leave to examine Janis for bias based upon the status of any cur-

---

1. The psychiatrist did not testify at the motion hearing.

rent plea bargaining between the State and the witness.

SDCL 26–8–57 provides:

No adjudication, disposition, or evidence given in proceedings brought under this chapter shall be admissible against a child in any criminal or other action or proceeding, except in subsequent proceedings under this chapter concerning the same child and subsequent criminal proceedings for sentencing purposes on a felony charge.

The language of the statute reveals that the Legislature intended to provide broadly for the confidentiality of juvenile records. SDCL 19–14–15, however, states:

Evidence of juvenile adjudications is generally not admissible under § 19–14–12.[2] The court may, however, in a criminal case allow evidence of a juvenile adjudication of a witness other than the accused if conviction of the offense would be admissible to attack the credibility of an adult and the court is satisfied that admission in evidence is necessary for a fair determination of the issue of guilt or innocence.

■■■ It therefore appears that use of juvenile records to impeach a minor witness for the State is neither absolutely permitted nor absolutely forbidden. We recognize that the opportunity to cross-examine any prosecution witness is central to the fundamental right of confrontation and to the conduct of an effective defense. *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). However, the "extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court," *Alford v. United States*, 282 U.S. 687, 694, 51 S.Ct. 218, 220, 75 L.Ed. 624, 629 (1931), and the

**2.** SDCL 19–14–12 reads:

For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted but only if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party or the accused and the crime

trial court may always limit cross-examination to prevent repetitive and unduly harassing interrogation. *Davis v. Alaska*, supra. That discretion, however, must be exercised "with the utmost caution and solicitude for the defendant's Sixth Amendment rights." *United States v. Houghton*, 554 F.2d 1219, 1225 (1st Cir. 1977), cert. denied, 434 U.S. 851, 98 S.Ct. 164, 54 L.Ed.2d 120 (1977). The trial court's "latitude in the control of cross-examination . . . 'cannot . . . justify a curtailment which keeps from the jury relevant and important facts bearing on the trustworthiness of crucial testimony.' " *United States v. Harris*, 501 F.2d 1, 8 (9th Cir. 1974), quoting *Gordon v. United States*, 344 U.S. 414, 423, 73 S.Ct. 369, 375, 97 L.Ed. 447, 455 (1953).

Appellant relies primarily upon *Davis v. Alaska*, supra, wherein the accused was convicted of burglary. The prosecution's main witness was a sixteen-year-old probationer who had been adjudicated a delinquent for prior burglaries. He identified the accused as the individual he had seen in the area where fruits of the *Davis* burglary were subsequently found. The defense sought to introduce the juvenile record to show the existence of possible bias and prejudice of the juvenile, causing him to make a faulty initial identification of the accused, which in turn could have affected his later in-court identification of the accused. The trial court, relying upon Alaska statutes protecting the anonymity of juvenile offenders, issued a protective order prohibiting any inquiry into the witness' juvenile record.

The United States Supreme Court reversed, ruling that such denial violated the accused's right to confrontation under the Sixth and Fourteenth Amendments:

(1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or
(2) involved dishonesty or false statement, regardless of the punishment.

The State's policy interest in protecting the confidentiality of a juvenile offender's record cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness. The State could have protected . . . [the juvenile] from exposure of his juvenile adjudication in these circumstances by refraining from using him to make out its case; the State cannot, consistent with the right of confrontation, require the petitioner to bear the full burden of vindicating the State's interest in the secrecy of juvenile criminal proceedings.

415 U.S. at 320, 94 S.Ct. at 1111, 39 L.Ed. 2d at 356.

■ The State argues that the instant case and *Davis* are distinguishable, because the witness here was not on probation at the time of the offense.[3] We cannot say that the *Davis* rule applies only where current probationary status exists, for that would be inconsistent with the very considerations of fairness underpinning the *Davis* decision. *See People v. Williams*, 40 Colo. App. 30, 569 P.2d 339 (1977); *People v. Taylor*, 190 Colo. 210, 545 P.2d 703 (1976). That such a restricted reading of *Davis* is unwarranted is borne out by the Court's statement that the juvenile adjudication was "admissible to afford a basis for an inference of undue pressure because of . . . [the juvenile's] vulnerable status as a probationer [citation omitted] *as well as* . . . [the juvenile's] possible concern that he might be a suspect in the investigation." 415 U.S. at 318, 94 S.Ct. at 1111, 39 L.Ed.2d at 354 (emphasis supplied). *See also, Commonwealth v. Ferrara*, 368 Mass. 182, 330 N.E.2d 837 (1975).

■ We do, however, find a significant distinction between *Davis* and the present case. *Davis* makes clear that the admission of juvenile adjudications is a matter of constitutional dimension only where the witness is crucial to the prosecution's case. In *Davis*, the juvenile witness' testimony was essential to the State's case, as it "provided 'a *crucial link* in the proof . . . of petitioner's act.'" 415 U.S. at 317, 94 S.Ct. at 1111, 39 L.Ed.2d at 354, quoting *Douglas v. Alabama*, 380 U.S. 415, 419, 85 S.Ct. 1074, 1077, 13 L.Ed.2d 934, 937 (1965). The testimony of the juvenile in the instant case simply tended to corroborate that of the complaining witness. Moreover, the complaining witness' testimony with respect to appellant's role in the offense was corroborated by the testimony of his co-defendant, Bald Eagle. Janis' testimony was thus largely cumulative and, as such, cannot be deemed to have provided a "crucial link" in the State's case. Finally, we note that the cross-examination of Janis was not unreasonably restricted; defense counsel was granted leave to question the witness to expose possible bias stemming from any plea bargaining relative to the adjudication pending at the time of trial. We accordingly conclude that appellant's Sixth Amendment rights were not violated by the trial court's ruling, nor did the limitation on cross-examination constitute an abuse of discretion under SDCL 19–14–15.

We have reviewed appellant's remaining arguments and find them to be without merit. The judgment of conviction is affirmed.

All the Justices concur.

■

---

3. The trial judge also relied on this distinction as reflected by his statement that "Mr. Janis was not on probation at the time of the offense, so it is my feeling the law precludes use of his juvenile records."