STATE of South Dakota, Plaintiff
and Appellee,

v.

Stephen LAYTON (# 13845) and Ronald
Dennis (# 13850), Defendants
and Appellants.

Nos. 13845, 13850.

Supreme Court of South Dakota.

Argued May 25, 1983.

Decided Aug. 24, 1983.

Mark W. Barnett, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on the brief.

Joseph Neiles of Minnehaha County Public Defender's Office, Sioux Falls, for defendant and appellant Layton.

David Alan Palmer of Strange, Strange & Palmer, Sioux Falls, for defendant and appellant Dennis.

HENDERSON, Justice.

## PROCEDURAL HISTORY

On November 18, 1981, a Grand Jury charged appellant Dennis with four counts of attempted first-degree murder and two counts of aggravated assault. Appellant Layton was charged with one count of attempted first-degree murder and one count of aggravated assault. All of the charges stemmed from a violent attack by appellants on several unarmed South Dakota Penitentiary guards on November 7, 1981.

Appellants were jointly arraigned on November 19, 1981, at which time the State advised appellant Layton of an incorrect statutory cite on the aggravated assault charge. During arraignment, appellant Layton was advised by the court that, if convicted of all charges against him and found to be a habitual offender, he could be sentenced to two consecutive life sentences plus thirty years; appellant Dennis was ad-

vised that a conviction on all his charges and a habitual offender charge could result in eight consecutive life sentences plus sixty years. Appellants entered pleas of not guilty to all charges.

On January 22, 1982, the State filed a motion to amend appellant Dennis' information to include a newly discovered third prior felony conviction of appellant Dennis. A pretrial motion hearing was conducted on February 5, 1982, wherein the following motions and rulings occurred: (1) appellant Dennis acknowledged the third prior felony and moved that any rulings on the habitual offender issues be deferred until after trial —granted; (2) appellants moved to dismiss the indictment due to an alleged misjoinder under SDCL 23A–6–24—denied; (3) appellant Layton motioned for a dismissal of his information due to a miscited statute—denied; and (4) the State motioned for an in-camera inspection of statements taken from inmate witnesses, alleging disclosure would endanger their lives—granted. On February 18, 1982, another pretrial motion hearing was conducted, wherein appellants' motion to sever their trials was taken under advisement and subsequently denied.

A jury trial was held from March 30 through April 8, 1982, resulting in appellant Dennis' conviction on four counts of aggravated assault and appellant Layton's conviction on two counts of aggravated assault. One of appellant Dennis' convictions was subsequently set aside. On April 12, 1982, appellant Dennis was arraigned upon the habitual offender information, as amended by the State's motion. The trial court formally allowed the amendment on April 26, 1982, after both parties submitted affidavits. On May 18, 1982, after a stipulation, a court trial was held and both appellants were found guilty of being habitual offenders. Appellant Layton was sentenced to consecutive thirty-year terms on each count to begin after his current sentence expired. Appellant Dennis was sentenced to three concurrent life sentences to begin at the expiration of his current sentence. On June 9, 1982, findings of fact, conclusions of law, and a judgment were entered. Notices

of appeal were filed on June 23 and 25, 1982. We affirm.

## FACTS

Both appellants have been inmates at the South Dakota Penitentiary at all times relevant hereto. From 1:00 p.m. to 4:00 p.m. on Saturdays, inmates are allowed recreation in the prison yard. A bell is rung at 3:25 p.m. notifying inmates that they may shower and buy ice cream if they desire. A lock-up bell is rung at 4:00 p.m. Inmate travel inside the penitentiary is restricted to the floor and cell hall in which the inmate lives. On November 7, 1981, a Saturday, both appellants were observed in areas outside of their floors and cell block. At 3:45 p.m., the guards noticed that most inmates had chosen to remain inside the cell block; thus, the lock-up bell was rung early. Sergeant Ellis noticed some inmates moving too slowly returning to their cells and he dispatched Officers Laackmann and Knudsen to speed the inmates up. Ellis went to the top floor and noticed both appellants illegally in that area. After some conversation, Ellis and Laackmann followed appellants to the end of the floor.

As they approached the door at the end of the floor, appellants turned to face the unarmed Ellis, Laackmann, and Officer Knudsen who had joined them. Ellis ordered appellants to go downstairs. Upon appellants' refusal, Ellis started to call the Captain on his radio. Suddenly, appellants and inmate Smith charged towards the guards with appellant Dennis in the lead brandishing a homemade knife and demanding Ellis' radio. Ellis turned away from the charging appellant Dennis and was stabbed in the back. Ellis saw appellant Dennis withdrawing his arm from Ellis' back. Appellant Dennis was the only person within reach of Ellis. Ellis quickly retreated with appellant Dennis in pursuit. Ellis jumped into an open cell, locking himself inside.

In the meantime, Laackmann had been attacked with a chain by inmate Smith. As Laackmann moved to subdue Smith, he turned his back on appellant Layton. In-

stantly, Laackmann was stabbed repeatedly in the back. Appellant Layton was the only inmate standing behind Laackmann. Officers Knudsen and Laackmann retreated, locking themselves in an end cage at the end of the floor.

Officer McGee, who was also unarmed, heard the struggle and ran upstairs hoping to control the developing crowd. Upon hearing someone call him an obscenity, McGee turned and saw appellant Dennis stab him in the stomach. Appellant Dennis retreated with McGee in pursuit until appellant Dennis turned and yelled that he was going to stab McGee again. McGee stopped, appellant Dennis fled.

Officer Eachen, also unarmed, ran upstairs and assisted Officer Scholten handcuffing inmate Smith and moving him to the ground floor. As they reached the ground floor, a group of inmates attacked the unarmed guards. Appellant Dennis attacked Eachen with a club inflicting serious injuries upon Eachen's arm and hand. Eachen promptly retreated.

### ISSUES

#### I.

DID THE TRIAL COURT ERR IN RULING THAT AN INACCURATE STATUTE IN ONE OF APPELLANT LAYTON'S CHARGES WAS NONPREJUDICIAL?

#### II.

DID THE TRIAL COURT ABUSE ITS DISCRETION BY ADMITTING SEVERAL PHOTOGRAPHS INTO EVIDENCE?

#### III.

DID THE TRIAL COURT PROPERLY PROHIBIT APPELLANT LAYTON FROM USING A WITNESS' JUVENILE RECORD FOR IMPEACHMENT?

#### IV.

WERE TWO PRIOR FELONIES, COMMITTED BY APPELLANT DENNIS, PART OF THE SAME TRANSACTION WITHIN THE MEANING OF SDCL 22–7–9?

#### V.

DID THE TRIAL COURT ERR IN ALLOWING THE STATE TO AMEND ITS HABITUAL OFFENDER INFORMATION AGAINST APPELLANT DENNIS?

#### VI.

DID THE TRIAL COURT ERR IN WITHHOLDING THE DISCOVERY OF STATEMENTS MADE BY INMATE WITNESSES?

#### VII.

DID THE TRIAL COURT ERR IN REFUSING TO SEVER APPELLANTS' TRIAL?

#### VIII.

MAY AN INMATE WHO COMMITS FELONIES WHILE INCARCERATED BE SENTENCED AS A HABITUAL OFFENDER UNDER SDCL CH. 22–7, AND ALSO AS A PRISON OFFENDER UNDER SDCL 22–6–5.1?

### DECISION

#### I.

Appellant Layton's indictment contained an incorrect citation in one count to SDCL 22–18–1(3), a negligence assault statute. The count alleged facts supportive of SDCL 22–18–1.1(3), an aggravated assault upon a law enforcement officer statute. At the arraignment, the State informed appellant Layton of this error. The court ruled that the error was a clerical mistake and that it was neither misleading nor confusing.

■ SDCL 23A–6–4 provides in part: "Error in the citation [of the statute] shall not be ground for dismissal of the indictment or information or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice."

Appellant Layton was promptly notified of the error and has failed to show any prejudice. This issue is affirmed.

## II.

At trial, photographs of Officer Laackmann's injuries and of both appellants were admitted into evidence over appellant Layton's objection. Appellant Layton asserts the trial court abused its discretion because the photographs of Laackmann were cumulative in nature and the photographs of appellant Layton were unnecessary because identification was not at issue. The State asserts that the photographs of Laackmann's injuries taken the evening of November 7, 1981, accurately depict the harm inflicted upon him better than a short glimpse of Laackmann's scars during trial. As for the photographs of appellant Layton, the State contends they show the attack was not provoked by the guards striking appellant Layton, because appellant Layton was uninjured.

■ It is well accepted in this State that in aggravated assault cases, the nature and extent of the victim's injuries may be shown by relevant and material photographs accurately portraying facts upon which witnesses could competently testify. *State v. Rash,* 294 N.W.2d 416 (S.D.1980). Likewise, photographs in general are admissible into evidence when they meet the above-referenced requirements. *State v. Kaseman,* 273 N.W.2d 716 (S.D.1978). Thus, photographs of appellant Layton's unmarked body have probative value. As with any other demonstrative evidence, the admission of photographs lies within the sound discretion of the trial court. *State v. Kane,* 266 N.W.2d 552 (S.D.1978).

■ The trial court edited some of the photographs to remove prejudicial effect. A review of the trial transcript reveals that Laackmann did testify that the guards did not strike or provoke appellant Layton. We are convinced that the trial court did not abuse its discretion in admitting the photographs into evidence.

## III.

In chambers, appellants requested permission to impeach a State witness on his juvenile record. Referring to SDCL 19–14–15, the trial court ruled that the probative value of the witness' juvenile record was outweighed by its prejudicial effect, and denied appellants' request. Appellant Layton now urges that the trial court erred.

Decisions on the cross-examination of a witness' juvenile record are governed by *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Premised upon *Davis,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 we have recently held: "[T]he admission of juvenile adjudications is a matter of constitutional dimension only where the witness is crucial to the prosecution's case." *State v. Wounded Head,* 305 N.W.2d 677, 681 (S.D.1981). This same principle of permitting impeachment on juvenile records only for key witnesses is found in our recent case of *State v. Volk,* 331 N.W.2d 67 (S.D.1983).

■ After examining the testimony of the witness in question, we are unable to conclude that he was a "key" or "crucial" witness. Essentially, his testimony served to corroborate the testimony of the penitentiary guards. Additionally, since the witness was extensively cross-examined, the jury was keenly aware of the witness' adult criminal record. Therefore, the trial court did not abuse its discretion on this evidentiary issue.

## IV.

Appellant Dennis asserts that for habitual offender purposes, two of his prior felony convictions should be considered as emanating from "the same transaction" and therefore chargeable as only one prior conviction. SDCL 22–7–9 provides:

A prior conviction may not be considered under either § 22–7–7 or § 22–7–8 unless the defendant was, on such prior conviction, discharged from prison, jail, probation or parole within fifteen years of the date of the commission of the principal offense. In addition, only

one prior conviction arising from the same transaction may be considered.

■ It is undisputed that on May 3, 1975, appellant Dennis committed first-degree armed robbery and that one month later, on June 3, 1975, appellant Dennis committed grand larceny. Each felony was tried separately resulting in sentencing for the grand larceny on October 2, 1975, and sentencing for the armed robbery on October 9, 1975. Appellant Dennis' armed robbery sentence was made concurrent with his grand larceny sentence to allow the Board of Pardons discretion in deciding how long appellant Dennis might serve beyond the forty-eight-month larceny sentence.

There being no factual basis to conclude the two felonies were related, we are unable to adopt appellant Dennis' rationale. The trial court correctly considered the two distinct 1975 felonies as separate for habitual offender purposes.

## V.

Appellant Dennis next contends that the trial court erred in allowing the State to amend its habitual offender information upon the discovery of appellant Dennis' third prior felony conviction. It is undisputed that the third prior felony conviction occurred.

■ The State advocates: (1) appellant Dennis knew from the outset that the State sought habitual offender treatment; (2) appellant Dennis was informed at his original arraignment that he could receive up to eight consecutive life sentences plus sixty years; (3) seventy days prior to trial, appellant Dennis knew the State was accusing him of three prior felony convictions rather than two; and (4) fifty-four days prior to trial, appellant Dennis admitted the existence of a third prior felony conviction and suggested deferring habitual offender issues until after trial.

SDCL 22–7–11 provides in part:

An allegation that a defendant is an habitual criminal must be filed as a separate information at the time of, or before, his or her arraignment. The information must state the times, places and specific crimes alleged to be prior convictions and must be signed by the prosecutor.

Provisions of our habitual offender statutes, SDCL ch. 22–7, are to be strictly construed and complied with. *State v. Alexander,* 313 N.W.2d 33 (S.D.1981). Amendments of an habitual offender information have been allowed providing the defendant is not prejudiced thereby. *State v. Garritsen,* 302 N.W.2d 409 (S.D.1981). *See generally, State v. Giuliano,* 270 N.W.2d 33 (S.D.1978) (allowing informations to be amended so long as prejudice does not result).

In light of the admission by Dennis of the third felony significantly before the trial date, appellant Dennis' understanding at arraignment of the possible sentence he faced, and his desire to defer the amendment issue until after trial, we are unable to hold that the trial court erred. Appellant Dennis was not prejudiced by the amendment.

## VI.

Both appellants protest that the trial court erred in withholding discovery on statements made by several inmate witnesses. The trial court made an in-camera review of the statements and concluded that discovery would not be granted pursuant to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The trial court sealed the statements for the inmate witness' protection and our review.

*Brady,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 stands for the proposition that prosecutorial suppression of requested evidence favorable to an accused violates a defendant's due process where the information is material to either guilt or punishment.

■ We have scrutinized the sealed statements in accordance with *Brady* and we agree with the trial court's disposition of this issue. We fear the dissemination of information in a prison riot scenario which would imperil the lives of witnesses. The sealed documents disclosed, although a few prison inmates testified, inmate after in-

mate refused to testify strongly believing that coming forward with testimony would produce death. Appellants' violent behavior of November 7, 1981, makes us all too cognizant of the unique safety problems faced by inmate witnesses. *See Hewitt v. Helms,* —— U.S. ——, ——, 103 S.Ct. 864, 872, 74 L.Ed.2d 675, 689 (1983).

## VII.

■ Appellants maintain the trial court erred in conducting a joint trial below. As support, appellants argue their indictments did not comport with SDCL 23A–6–24 which requires that both appellants participate "in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." SDCL 23A–11–2 provides that the trial court may order a severance when prejudice would result from a joint trial. Decisions to sever a trial are within the sound discretion of the trial court and its decision will not be disturbed on appeal, absent a showing of abuse of discretion. *State v. Reiman,* 284 N.W.2d 860 (S.D.1979); *State v. Bonrud,* 246 N.W.2d 790 (S.D.1976).

In *United States v. Bledsoe,* 674 F.2d 647 (8th Cir.1982), an issue was joinder of criminal defendants under Federal Rule of Criminal Procedure 8(b) which is identical to SDCL 23A–6–24. *Bledsoe,* 674 F.2d at 655, holds that although the propriety of joinder must facially appear on the indictment, the prerequisites for joinder under Fed.R. Crim.P. 8(b) should be so construed to balance any prejudice against a policy which favors judicial efficiency. Minnehaha County is unique to South Dakota jurisprudence in that it is the second judicial circuit. Sioux Falls, the state's largest city, is situated in Minnehaha County and is the situs of the State Penitentiary. The State Penitentiary fosters a great amount of criminal litigation in Minnehaha County.

■ Although the indictments herein could have been more explicit, we hold that they are facially sufficient under SDCL 23A–6–24 as they clearly reveal both appellants took part in violence inflicted upon the Penitentiary guards during the melee of November 7, 1981. The charged offenses were part of the same transaction. Considerable factual overlap exists between the charges. The settled record exhibits a systematically concerted sequence of violent events. Therefore, joinder was proper unless appellants were prejudiced thereby. A homemade knife and a chain to be used as weapons did not just happen. It is evident that a transaction of violence was planned. Our examination of the voluminous settled record reveals that neither appellant testified nor sought to compel each other to testify. The trial court diligently cautioned and instructed the jury to keep distinct any separate facts and charges against each appellant. Therefore, we are unable to conclude that appellants were prejudiced or that the trial court abused its discretion in denying a severance of the trial below.

## VIII.

After appellants' convictions, the trial court levied sentences by first applying SDCL 22–6–5.1 which provides:

A court may sentence any person convicted of a crime committed while he was a prisoner as defined by § 22–11A–1, to a term of not more than twice the maximum term allowed by the statute for the commission of the same crime by a person not so confined.

Next, the trial court sentenced appellants under SDCL 22–7–8: "When a defendant has been convicted of at least three prior felony convictions in addition to the principal felony, the sentence for the principal felony shall be enhanced to the sentence for a Class 1 felony."

SDCL 22–7–9 provides:

A prior conviction may not be considered under either § 22–7–7 or § 22–7–8 unless the defendant was, on such prior conviction, discharged from prison, jail, probation or parole within fifteen years of the date of the commission of the principal offense. In addition, only one prior conviction arising from the same transaction may be considered.

The crux of appellants' position is that SDCL 22–7–9 precludes an application of SDCL 22–7–8 to appellants because they have not been discharged from prison from all of their prior felonies. The State asserts that SDCL 22–7–9 is merely a statute of limitations to preclude consideration of stale convictions.

■■■■ Strictly construing SDCL 22–7–9, we are convinced that it is a limitations statute to preclude the use of stale convictions. *But see, Martin v. Commonwealth,* 571 S.W.2d 613 (Ky.1978). Therefore, the language of SDCL 22–7–9 concerning a "discharge" does not operate to bar habitual offender treatment for inmates. It would be an anomalous result, if we were to allow a nonincarcerated three-time felon to face a considerably enhanced sentence, while the three-time felon who commits felonies during his incarceration would only face a doubling of his sentence.

The individual who commits felonies while incarcerated exhibits a callous disregard of our penal system, is dangerous to penitentiary personnel, and wreaks havoc with an institution which can exist only through discipline. SDCL 22–6–5.1, the inmate doubling statute, operates in part to protect the unarmed penitentiary guards who must risk their safety to enforce penitentiary rules. SDCL 22–7–8, our habitual offender statute, operates to protect society from the individual who, through his continued felonious conduct, exhibits that efforts of rehabilitation have failed. These two statutes serve distinct purposes, each being a vital concern to our criminal justice system. The trial court correctly first sentenced appellants as inmate felons and secondly as habitual offenders.

All other issues not specifically treated herein are deemed nonmeritorious.

Affirmed.

All the Justices concur.