**STATE of South Dakota, Plaintiff
and Appellee,**

v.

**Calvin Earle SPRIK, Defendant
and Appellant.**

No. 18469.

Supreme Court of South Dakota.

Considered on Briefs May 23, 1994.

Decided Aug. 10, 1994.

Mark Barnett, Atty. Gen., Ann C. Meyer, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Robin L. Zephier, Pennington County Public Defender's Office, Rapid City, for defendant and appellant.

SABERS, Justice.

Defendant appeals his convictions for Third Degree Rape and habitual offender. We affirm.

## FACTS

According to testimony presented at trial, thirteen-year-old N.G. met the defendant, Calvin Sprik (Sprik), at Hardee's on Fifth Street in Rapid City, South Dakota on the evening of September 14, 1992. Enticed by the promise of free drugs, N.G. left Hardee's with Sprik. The two walked in the direction of Memorial Park. As they were walking, Sprik, who was carrying a bedroll attached to a backpack, pointed down an alley and told N.G. that he was sleeping under the stairwell. N.G. repeatedly asked Sprik for the "dope," but Sprik told her to wait.

When N.G. and Sprik stopped by a little creek in Memorial Park, N.G. sat on a picnic table and smoked a cigarette. N.G. again asked Sprik if he had the "dope." Sprik sat on the ground and rummaged through the backpack he was carrying, claiming that was where he kept the drugs. Sprik asked N.G. to come and sit down beside him. N.G. squatted next to Sprik. When she began to feel uncomfortable, however, she attempted to stand. Sprik then pushed N.G. to the ground and told her that he was going to "fuck her." N.G. began to cry. Sprik forced N.G. to have sexual intercourse with him, then withdrew his penis, sat on the picnic table, and forced N.G. to perform fellatio. Sprik then pushed N.G. onto the ground and forced her to have sexual intercourse with him again. N.G. was forced to engage in fellatio a second time, and sexual intercourse

a third time. Sprik's position, through other witnesses, was that he was not with N.G.

N.G. was able to escape and flag down a car after convincing Sprik that she saw someone. The driver of the car took N.G. to a house N.G. said was her home. It was actually her boyfriend's home. At trial, N.G. admitted lying to the driver about her residence, about her boyfriend being her brother, and about her father being a "cop."

The driver reported the rape to the police and directed them to where she had dropped off N.G. The police recognized N.G. because her mother had reported her as a runaway earlier that evening. The officers interviewed N.G., took her home, and then to the hospital. Although N.G. told police officials that Sprik forced her to go to the park, she later admitted this was a lie. Police found Sprik asleep under the stairwell he had pointed out to N.G. N.G. identified Sprik from a patrol car as her attacker.

Sprik was charged with three counts of Second Degree Rape, a felony, in violation of SDCL 22–22–1(2); or, in the alternative, three counts of Third Degree Rape, a felony, in violation of SDCL 22–22–1(5) (formerly statutory rape). Under Counts I, III, and V of the Information, Sprik was charged:

> That on or about the 14th day of September, 1992, in the County of Pennington, State of South Dakota, Calvin Earle Sprik did commit the public offense of Second Degree Rape (Felony) in that he did then and there commit an act of sexual penetration with [N.G.] through the use of force, coercion or threats of immediate and great bodily harm against [N.G.], accompanied by apparent power of execution, in violation of SDCL 22–22–1(2)[.]

Under Counts II, IV, and VI, Sprik was charged in the alternative:

> That on or about the 14th day of September, 1992, in the County of Pennington, State of South Dakota, Calvin Earle Sprik did commit the public offense of Third Degree Rape (Felony) in that he did then and there being at least three years older than [N.G.], feloniously accomplish an act of sexual penetration with [N.G.], said [N.G.] being more than ten (10) years of age and less than sixteen (16) years at the

time of said act of sexual penetration, in violation of SDCL 22–22–1(5).

Sprik was also charged in a Part II Information with being a habitual offender.

Sprik was tried to a jury. After nearly five hours of deliberation, Sprik was convicted of Count II of the Information, Third Degree Rape. The jury returned verdicts of not guilty on all other counts. The trial court found Sprik guilty of being a habitual offender and sentenced him to serve twenty-five years in the penitentiary. Sprik appeals.

**1. Whether the trial court erred in denying Sprik's Motions to Dismiss and for Judgment of Acquittal with respect to Counts III through VI of the Information.**

The six-part Information set forth three separate crimes of Second Degree Rape in violation of SDCL 22–22–1(2) (Counts I, III, and V), or, in the alternative, three separate crimes of Third Degree Rape in violation of SDCL 22–22–1(5) (Counts II, IV, and VI).[1] The jury convicted Sprik only of Count II— Third Degree Rape in violation of SDCL 22–22–1(5). Sprik argues that an accused cannot be charged with more than one count of sexual assault for the same offense against the same victim on the basis of the same continuous act. According to Sprik, "the duplicitous charging practice violates his rights secured to him under the Fifth and Fourteenth Amendments of the U.S. Constitution[ ] and Article VI, Sections 2 and 9 of the S.D. Constitution."

■ To accept Sprik's argument would be to hold that a defendant can perform as many acts of penetration as possible during a sexual encounter or transaction and be subject to punishment for only one act of penetration. See Michigan v. Wilson, 196 Mich. App. 604, 493 N.W.2d 471, 474 n. 2 (1992). These facts indicate, however, that there were five separate "acts of sexual pen-

etration" over the course of approximately two hours. (Sexual intercourse, fellatio, sexual intercourse, fellatio, and sexual intercourse.) Therefore, we conclude that under SDCL 22–22–1 and SDCL 22–22–2, the "Legislature intended to punish separately each criminal sexual penetration," *Wilson,* 493 N.W.2d at 474 (citations omitted), and it was not inappropriate to charge Sprik with more than one count of sexual penetration. *See generally Johnson v. Alaska,* 762 P.2d 493, 495 (Alaska Ct.App.1988) ("Separate convictions for multiple acts of penetration involving different openings of the victim's or the defendant's body are permissible."); *Rodriquez v. Alaska,* 741 P.2d 1200, 1208 (Alaska Ct.App.1987) (although a continuous transaction, there was a completed sexual act followed by another separate sexual act).

■ Sprik also argues that the counts "were not specifically set out as specific incidents of specific conduct in which to bar multiple or subsequent prosecution of each count upon conviction or acquittal thereof." To be sufficient, an information must state all of the elements of the offense charged, fairly inform the defendant of the charge against him, and enable the defendant to plead an acquittal of conviction in bar of future prosecutions for the same offense. *State v. Oster,* 495 N.W.2d 305, 307 (S.D.1993) (citations omitted); *State v. Floody,* 481 N.W.2d 242, 246 (S.D.1992) (citations omitted). This court "has consistently held that an indictment is generally sufficient if it employs the language of the statute or its equivalent." *Oster,* 495 N.W.2d at 307 (citations omitted).

■ This court addressed similar arguments in *State v. Wurtz,* 436 N.W.2d 839 (S.D.1989) and *Floody,* 481 N.W.2d 242. In both instances, this court held against the defendant, noting that "[a] party may proceed with proof, outside of the information

---

1. SDCL 22–22–1 defines rape (in part) as:

    *an act of sexual penetration* accomplished with any person under any of the following circumstances:

    (2) Through the use of force, coercion or threats of immediate and great bodily harm against the victim or other persons within the victim's presence, accompanied by apparent power of execution; or

    (5) If the victim is ten years of age, but less than sixteen years of age, and the perpetrator is at least three years older than the victim[.] (Emphasis added.) Sexual penetration is defined in SDCL 22–22–2 as *"an act,* however slight, of sexual intercourse, cunnilingus, fellatio, anal intercourse, *or* any intrusion, however slight, of any part of the body or of any object into the genital and anal openings of another person's body." (Emphasis added.)

itself, to determine the charge which the conviction was based upon in order to raise it as a bar to a subsequent prosecution." *Floody*, 481 N.W.2d at 247 (quoting *Wurtz*, 436 N.W.2d at 843).

During the preliminary hearing, and at trial, N.G. testified that she was penetrated vaginally three times and orally twice. The State moved, at the close of the preliminary hearing, to amend the complaint to conform to the evidence to five separate acts rather than three because "I believe the victim's testimony here substantiates more acts of sexual penetration than what was originally charged out in the complaint." The State's motion was denied. Finally, a separate decision was required by the jury on all counts. *See Floody*, 481 N.W.2d at 247. "Inasmuch as the language of the indictment properly incorporate[d] the statutory law of South Dakota, we find the indictment to be sufficient." *Oster*, 495 N.W.2d at 307–08.

■ Sprik argues that neither the Information nor the jury instructions described Counts I through VI as divisible incidents of sexual penetration. Therefore, according to Sprik, the jurors did not know which act of sexual penetration was attributable to which specific count and this led to a compromise verdict. In support, Sprik cites to a question from the jury during deliberations asking whether the sequence was vaginal, oral, vaginal.

While it may be true that Sprik "has no way of knowing which alleged act of penetration qualified as Third Degree Rape" nor does he "know which alleged act he was acquitted of," we find this harmless, if error. Whether the jury rejected the State's theory of the case, finding instead that the entire attack against N.G. constituted one count of Third Degree Rape, or simply found Sprik guilty beyond a reasonable doubt of only one of the three charged incidents of penetration, Sprik's conviction on Count II will prevent retrial based upon any alleged incidents of rape against N.G. occurring on September 14, 1992 at Memorial Park in Rapid City, South Dakota. *Floody*, 481 N.W.2d at 247 n. 7 (citing *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990)). This

clearly protects Sprik against Double Jeopardy.

**2. Whether the trial court abused its discretion in denying Sprik's request to use N.G.'s juvenile records for impeachment purposes.**

On May 21, 1993, the trial court signed an Order permitting Sprik to inspect and/or photocopy all adjudicatory orders and other relevant Juvenile Court criminal files and records pertaining to the victim, N.G. After an in camera review of the records, however, the trial court denied Sprik's request for access. Sprik argues that the trial court's ruling denied him the opportunity to effectively cross-examine and confront N.G. and to impeach her credibility.

■ Sprik's right to confront witnesses testifying against him is guaranteed by the Sixth Amendment to the United States Constitution and by Article VI, § 7 of the South Dakota Constitution. *State v. Bogenreif*, 465 N.W.2d 777, 782 (S.D.1991). However, "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.* (citing *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15, 19 (1985) (citations omitted; emphasis in original)). "Exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. However, trial courts have broad discretion to impose limits on cross-examination of witnesses for potential bias." *Id.* (citations omitted). *See State v. Grooms*, 399 N.W.2d 358, 362 (S.D. 1987) (stating that a trial court may, in its good judgment, control the realm of cross-examination). Sprik must show that "a reasonable jury probably would have a significantly different impression if otherwise appropriate cross-examination had been permitted." *State v. Koepsell*, 508 N.W.2d 591, 595 (S.D.1993) (citations omitted).

■ "Decisions on the cross-examination of a witness' juvenile record are governed by *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)." *State v. Layton*, 337 N.W.2d 809, 813 (S.D.1983).

The admission of juvenile adjudications is of constitutional dimension only where the witness is crucial to the prosecution's case. *Id.* (citing *State v. Wounded Head,* 305 N.W.2d 677, 681 (S.D.1981)). Because there were no witnesses to the rape, the testimony of N.G. was crucial to the State's case.

The Missouri Supreme Court, in *Missouri v. Russell,* 625 S.W.2d 138 (Mo.1981) (en banc), "interpreted *Davis* to allow a defendant to prove bias which could result from a juvenile witness's motive to lie because he is a suspect and subject to control of the juvenile authorities." *Missouri v. Baker,* 859 S.W.2d 805, 809 (Mo.Ct.App.1993) (citing *Russell,* 625 S.W.2d at 141). "The *Russell* court found that *Davis* did not hold that a court must permit the general credibility of a juvenile to be attacked by a record of a juvenile adjudication or by unrestrained cross-examination concerning such adjudication or acts of misconduct." *Id.*

This court interpreted *Davis* similarly in *State v. Rough Surface,* 440 N.W.2d 746 (S.D.1989). Noting that the juvenile witness in *Davis* was on probation for a burglary charge, we stated:

> The [Supreme] Court [in *Davis*] distinguished between a general attack on credibility, which it characterized as an effort "to infer that the witness' character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony[,]" and a more particular attack on the witness' credibility, "effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand."

*Rough Surface,* 440 N.W.2d at 752 (quoting *Davis,* 415 U.S. at 316, 94 S.Ct. at 1110, 39 L.Ed.2d at 353–54).

> The question which demanded cross-examination on the juvenile's record was whether he had testified to protect his probationary status or to shift suspicion away from himself. The opinion repeatedly referred to bias and prejudice. In that respect, we read the *Davis* court as limiting its hold-

ing. "*In this setting* we conclude that the right of confrontation is paramount to the State's policy of protecting a juvenile offender."

*Id.* (quoting *Davis,* 415 U.S. at 319, 94 S.Ct. at 1112, 39 L.Ed.2d at 355) (emphasis added in *Rough Surface*).

The trial court conducted an in camera review of N.G.'s juvenile records and determined that the information was unrelated to the matters at issue in the criminal prosecution against Sprik. *See Baker,* 859 S.W.2d at 810 (court and counsel viewed the record in camera). Sprik failed to make an offer of proof which would have provided a record of N.G.'s juvenile records for appellate review. *See Bogenreif,* 465 N.W.2d at 782 (noting that defendant, who was contending that he was denied a full opportunity to question a key witness for the prosecution, made an offer of proof). Even without access to N.G.'s juvenile records, N.G. was subject to extensive cross-examination concerning her credibility. *See Id.* (defense counsel permitted to expose to the jury facts from which they could judge witness' credibility); *Layton,* 337 N.W.2d at 813 (since the witness was extensively cross-examined, the jury was well aware of the witness' criminal record). It appears from the record that Sprik wanted access to N.G.'s juvenile records to continue to impeach her credibility, rather than to conduct "a more particular attack on [N.G.'s] credibility ... directed toward revealing possible biases, prejudices, or ulterior motives ... as they may relate directly to issues or personalities in the case at hand." *Rough Surface,* 440 N.W.2d at 752 (citation omitted). Sprik has failed to show that a reasonable jury probably would have had a significantly different impression of N.G.'s credibility if he had been allowed to use her juvenile records for impeachment purposes. *Koepsell,* 508 N.W.2d at 595; *Bogenreif,* 465 N.W.2d at 782. Therefore, he has failed to show that the trial court abused its discretion in denying his request to use N.G.'s juvenile records for impeachment purposes.[2] *Grooms,* 399 N.W.2d at 362.

2. *See* SDCL 19–14–15 which provides:

Evidence of juvenile adjudications is generally not admissible under § 19–14–12. The

### 3. Whether the evidence was sufficient to support the jury's verdict.

Sprik argues that the evidence was insufficient, as a matter of law, to sustain the verdict of guilty on Count II, Third Degree Rape. Our standard of review for determining the sufficiency of the evidence on appeal in a criminal case is well-established. The question is whether there is evidence in the record, which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt. *State v. Davi,* 504 N.W.2d 844, 856 (S.D.1993) (citing *State v. Davis,* 401 N.W.2d 721, 722 (S.D.1987); *State v. Ashley,* 459 N.W.2d 828 (S.D.1990)); *State v. Brings Plenty,* 490 N.W.2d 261, 266 (S.D. 1992) (citations omitted). "In making our determination, this Court will accept the evidence and the most favorable inferences fairly drawn therefrom, which will support the verdict." *Davi,* 504 N.W.2d at 856 (citing *State v. Sondreal,* 459 N.W.2d 435 (S.D. 1990)).

According to Sprik, the State failed to present any evidence that Sprik was, at the time of the incident, at least three (3) years older than N.G. A review of the record indicates that Sprik failed to preserve this issue for appeal. *See State v. Svihl,* 490 N.W.2d 269, 272 (S.D.1992) (defendant failed to preserve the issue because the trial court never ruled on defendant's request for a standing objection). During a hearing in chambers for the purpose of settling jury instructions, the following exchange occurred:

> The Court: I believe there are no remaining motions other than that deal with what you feel is a surplus of counts, Mr. Zephier, and we will address those as we get to the instructions. You have made all the motions that you want to make at this time?
>
> Mr. Zephier: There is one other one.
>
> The Court: Go ahead.
>
> Mr. Zephier: I don't recall but maybe the parties can inform me otherwise. I don't know if there was any evidence in the case regarding Mr. Sprik's age?

> Mr. Miller: I believe there was from Ken James.
>
> The Court: That is correct.
>
> Mr. Zephier: Okay. All right. *There is no motion then.*

Therefore, because Sprik did not make an objection or motion, the trial court was not afforded an opportunity to rule on this issue and it is not properly before us on appeal. *See generally Svihl,* 490 N.W.2d at 273 ("If the trial court fails to decide or rule on a motion, nothing is presented for review in the appellate court. The burden of demanding a ruling rests upon the party desiring it. If a party permits the court to proceed to judgment without action upon his motion or objection, he will be held to have waived the right to have the motion or objection acted upon.").

Sprik argues that the evidence was insufficient because N.G.'s testimony was critical to the State's case and N.G. admitted at trial, under oath, that she had committed perjury at the preliminary hearing. Contrary to Sprik's argument that "[p]erjured testimony must be set aside if there is a reasonable likelihood that it affected the jury verdict[,]" N.G.'s admitted perjury at the preliminary hearing does not mean that she also committed perjury at the trial. While her credibility was certainly at issue, the jury determined that, at least as to Count II, N.G. was credible. "We have previously held that it is the function of the jury to resolve evidentiary conflicts, determine the credibility of the witnesses, and weigh the evidence. As such, we afford the strongest presumption in favor of the jury's conclusions." *Brings Plenty,* 490 N.W.2d at 266 (citation omitted). There was sufficient evidence to sustain the jury's finding of Sprik's guilt on Count II. *Id.* at 266–67.

### 4. Whether the trial court erred in denying Sprik's motions to declare prior convictions invalid for enhancement under Part II.

Sprik moved the trial court for an order declaring the June 18, 1984 felony theft con-

---

court *may,* however, in a criminal case allow evidence of a juvenile adjudication of a witness other than the accused *if* conviction of the offense would be admissible to attack the cred-

ibility of an adult and *the court is satisfied that admission in evidence is necessary for a fair determination of the issue of guilt or innocence.* (Emphasis added.)

viction in Arizona and the November 23, 1977 escape conviction in Florida invalid to support the Part II Information as a habitual offender under SDCL § 22–7–7. Sprik's motions were denied and he was found to be a habitual offender.

■ A prior conviction carries a presumption of regularity. *State v. Moeller,* 511 N.W.2d 803, 815 (S.D.1994) (Amundson, J., concurring in result) (citing *State v. Randen,* 497 N.W.2d 107, 109 (S.D.1993)). In *Stuck v. Leapley,* 473 N.W.2d 476 (S.D.1991), we outlined the various burdens of proof in habitual offender proceedings.

> [W]here the defendant places the constitutional validity of the prior convictions in issue by a motion to strike or other appropriate means, the state has an initial burden of proving the existence of prior *valid* convictions by a preponderance of the evidence.

> [W]hen state meets its initial burden of proof, the burden shifts to the defendant to show that the prior convictions are invalid. This appears to require a plea transcript indicating that the prior plea was not valid, or testimony to that effect by a participant in the plea proceeding (i.e., defendant, defendant's attorney, the prosecutor, the judge, etc.).

*Stuck,* 473 N.W.2d at 478–79 (emphasis in original) (footnote and citations omitted), *see Randen,* 497 N.W.2d at 109.

■ Sprik argues that there is an insufficient factual basis to support the two prior convictions. SDCL 23A–7–14 provides that "[t]he court shall defer acceptance of any plea except a plea of nolo contendere until it is satisfied that there is a factual basis for the offense charged or to which the defendant pleads." The transcript of the Change of Plea for the 1984 felony theft conviction reveals the State's response to the court's request for the facts concerning the crime:

> On or about March 28th of this year the defendant and one Michael Eskeats were at the Flagstaff Mall. The defendant went into Kay's Jewelers, contacted the clerk in there and told her he was just looking. A phone rang and the clerk went to answer

the phone. When she came out, the defendant was gone and so were the two watches.

> Shortly after that two officials of the Kay's Jewelers found the defendant and Mr. Eskeats out on North 89 across from the mall. They confronted the two men, and each of the two men, Eskeats and the defendant here, produced a watch.

> The two watches had a value in excess of a hundred dollars; in fact, each watch was worth over a hundred dollars.

> Mr. Eskeats informed the officers that he had waited outside while he watched Mr. Sprik go in and take the watches from the stand. Mr. Sprik was positively identified by the clerk at the jewelry store as the person who she had seen enter the store before she went to answer the phone.

Clearly, this transcript details the factual basis for Sprik's 1984 felony theft conviction. And while "a plea of guilty cannot stand unless the record in some manner indicates a free and intelligent waiver of the three constitutional rights mentioned in *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)—self-incrimination, confrontation and jury trial—and an understanding of the nature and consequences of the plea," *Randen,* 497 N.W.2d at 108–09 (citing *Nachtigall v. Erickson,* 85 S.D. 122, 128, 178 N.W.2d 198, 201 (1970)), the record indicates that Sprik, who was represented by counsel, acknowledged reading, understanding, agreeing to, and signing, the plea agreement. The court then informed Sprik that by pleading he gave up certain rights including "the right to keep your plea of not guilty, to have a trial by jury at which you would be represented by counsel, the right to confront and cross examine witnesses against you, the right to present evidence, testify in your own behalf if you wish to do so and to subpoena witnesses in your defense, and the right to remain silent and refuse to testify at trial." Sprik replied that he understood these rights and was willing to give them up. The record indicates a free and intelligent waiver by Sprik of his *Boykin* rights.

■ A Florida Official Court Reporter was unable to locate any transcripts or stenographic records concerning Sprik's 1977 con-

viction for escape. The Plea, Waiver and Consent, however, which was signed by Sprik and his attorney, indicates that Sprik was represented by counsel and states that he was fully advised of his constitutional rights. *Moeller*, 511 N.W.2d at 815 (Amundson, J., concurring in result).

In *Stuck*, we held that state met its initial burden of proving the constitutional validity of prior convictions challenged by a habeas corpus petitioner by submitting records of the convictions showing that, at the time the petitioner entered his guilty pleas, he was fully advised of his constitutional rights *and* was represented by counsel. Because the petitioner failed to offer plea transcripts indicating that the prior pleas were not valid and failed to offer any other evidence or testimony to that effect, we held that he failed to meet his burden of showing some invalidity in the prior convictions and upheld his habitual offender conviction.

*Moeller*, 511 N.W.2d at 815 (Amundson, J., concurring in result) (citation omitted) (emphasis in original). Here, as in *Stuck*, the State met its initial burden of proving the constitutional validity of the 1977 conviction for escape. As noted above, the State submitted records indicating that at the time Sprik entered his guilty plea, he was represented by counsel and fully advised of his constitutional rights. Therefore, the burden shifted to Sprik to show that the escape conviction was invalid. *Randen*, 497 N.W.2d at 109 (citation omitted). Because Sprik failed to offer a plea transcript or testimony by a participant indicating that the prior plea was not valid, Sprik has failed to meet his burden of showing that the escape conviction was invalid. *Moeller*, 511 N.W.2d at 815 (Amundson, J., concurring in result).

Finally, Sprik argues that the record of the 1984 theft conviction does not describe any intent, either specific or general. We agree with the trial court that "it appears that the elements of the offense to which the prosecuting attorney addressed himself met the elements in Arizona and would meet with sufficient interpretation the elements of the offense in South Dakota[.]" Sprik has not shown that the trial court

erred in denying his motions to declare his prior convictions invalid for enhancement under Part II. We affirm.

MILLER, C.J., and WUEST and AMUNDSON, JJ., concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

An intention of this writing is to keep constitutional rights strong, preserve precedent in this Court, and do justice in the case.

N.G. testified at the Motions Hearing, Preliminary Hearing, and Jury Trial that the act was "continuous." State is bound by this testimony. *Hopfinger v. Leapley*, 511 N.W.2d 845 (S.D.1994); *State v. Jacobson*, 491 N.W.2d 455 (S.D.1992).

Notwithstanding, State tactically saw fit to charge six felonies. A jury heard the evidence and returned one verdict of guilty, Third Degree Rape. Under the FACTS recitation in the majority opinion, the majority writer specifies, as a FACT, and details that there were these various sexual encounters, treating them all as *separate* acts. The jury held otherwise. The sole witness (N.G.) testified otherwise. Thus, Sprik was denied a fair trial.

In the second paragraph of the majority opinion's first issue it is stated that there were five separate acts of sexual penetration. Upon this factual back drop depicted again as a verity, the opinion builds its rationale. To level these many counts when N.G. has testified it was "continuous," was incongruous, and was not "harmless" (i.e., harmless error). Prejudicial error is that which, in all probability, must have produced some effect upon the final result and affected rights of the party assigning it. *State v. Larson*, 512 N.W.2d 732 (S.D.1994); *State v. Phillips*, 489 N.W.2d 613 (S.D.1992); *State v. Reddington*, 80 S.D. 390, 125 N.W.2d 58 (1963). Readers, please note: Majority opinion expresses, "While it may be true that Sprik 'has no way of knowing which alleged act of penetration qualified as Third Degree Rape nor does he know which alleged act he was acquitted of,' we find this harmless, if error." If Sprik was convicted by a "shotgun" approach (hoping

the pellets might strike one count), where evidence was not there to support a charge, the error is not harmless. Sprik proposed *specific* jury instructions to avoid a compromise verdict. All were denied.

A 25-year state penitentiary sentence was imposed upon Sprik. When the alleged victim testified that the act was continuous, a single count of Second Degree Rape and a single count of Third Degree Rape would have been a sufficient charging. The jury should not be permitted to speculate on the guilt of six charges when N.G. states it was a "continuous" act. It is noted, by this special writer, that the trial court's jury instructions on the specific individual counts did not specify particular acts of sexual penetration, specific time, place or method. It is wrong to charge an accused with multiple, duplicitous counts of an unspecified nature at unspecified times—and then let a jury figure it all out. Such type of criminal pleading takes on a generic hue—which creates obstacles and difficulties to prepare a defense and to thereafter assert double jeopardy. After three hours of deliberation, the jury, trying to be conscientious and fair, gave a note to the bailiff with this question: "Was the sequence vaginal, oral, vaginal?" Obviously, the jurors were perplexed, as they reflected upon (1) N.G.'s testimony, (2) the many instructions which appeared to give the jury very wide latitude in arriving at various verdicts, and (3) expert testimony by serologist Rex Riis, read to the jury at trial from a stipulation by both parties. Riis' pertinent testimony immediately follows.

Riis revealed that he found two spermatozoa on the vaginal swab and smear collected from N.G. during her rape examination. He also indicated that under normal conditions, this type of evidence would dissipate after approximately twelve hours. During this same examination of N.G., Riis did not detect semen on the oral swab and smear which were collected. Her rape examination took place at the Rapid City Regional Hospital, Rapid City, South Dakota, within a short period of time after the so-called "sexual intercourse, fellatio, sexual intercourse, fellatio, and sexual intercourse," as depicted in the second paragraph of the majority's opinion on issue 1. Therefore, with this type of alleged sexual activity, and with N.G. claiming it is "continuous," where is the proof of fellatio—which was submitted to the jury?

Riis also determined that the victim and Sprik had similar genetic markers. As Sprik had no foreign genetic marker, Riis was unable to conclude that Sprik was the so called "semen donor." Expressed in different vernacular, Riis' analysis could not identify if Sprik could be "included or excluded" as N.G.'s sexual attacker. This testimony is found in the Settled Record, pages 103–104. The jury deliberated for five hours—and appeared confused, as illustrated by the note it gave to the bailiff.

A defendant cannot be convicted of more than one count of criminal sexual conduct where there is only one act. *James v. Cupp,* 65 Or.App. 377, 671 P.2d 750, 751 (1983), *pet. denied,* 296 Or. 350, 675 P.2d 492 (1984); *People v. Ashford,* 91 Mich.App. 693, 283 N.W.2d 830, 833 (1979). *See State v. Weaver,* 386 N.W.2d 413, 417–18 (Minn.App.1986) (Defendant could not be convicted of two counts of first degree criminal sexual conduct for same offense against same victim on basis of same act); *People v. Hammon,* 191 Cal. App.3d 1084, 236 Cal.Rptr. 822, 827 (1987) (If all actions were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one). Recall, N.G. testified it was one continuous act.

N.G. was the State's witness as to the facts of sexual activity at Memorial Park. She was "the overall strength of the prosecution's case." N.G. was the crucial witness. *See State v. Koepsell,* 508 N.W.2d 591, 595 (S.D. 1993); *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986), below. Consider: Several witnesses, following her testimony, contradicted her testimony pertaining to the time of events and coinciding events. After a physical examination at the hospital, she was interviewed by Detective Gene Hammond; later, she admitted that she intentionally lied to Hammond. She further admitted to perjury. She admitted she was a "bad girl," and also admitted before the jury that she was a drug addict and alcoholic at the time of the alleged rape. She

told the jury she had a bad relationship with her mother and wanted to "keep anyone including her mom, from knowing about her." She testified she *was on probation* from juvenile court.

When Sprik's counsel attempted to cross-examine her concerning her past deviant behavior as reflected in her juvenile record, Sprik was denied his right to fully develop cross-examination and confrontation by the trial court. It is obvious that N.G.'s credibility was at issue and Sprik had the right to probe credibility, specifically under the facts of this case: (1) N.G.'s testimony was not cumulative (2) admitted perjury (3) lack of corroboration by other witnesses (4) alleged dishonesty and deceit reflected in the juvenile records. In *Koepsell,* relied upon by the majority opinion, this Court held there was error, but said error was expressed to be harmless because of (a) minimal contradiction and (b) extensive corroboration. That is not true in this case. In *Koepsell,* the witness' testimony was cumulative; not so in this case! A jury instruction on motive (concerning N.G.'s testimony) was denied by the trial court. In *State v. Steele,* 510 N.W.2d 661 (S.D.1994), we held, "[C]redibility was a key issue in the trial, and this information may well have raised a reasonable doubt in the minds of the jurors." The jury did not accept the facts as portrayed in the second paragraph of the majority opinion; not guilty, it found, of the several counts lodged against Sprik; yet, the majority uses those facts to build an affirmance herein. Again, I say: Not fair. This now takes me to my dissertation on the unfairness in the denial of cross-examination of N.G. regarding her juvenile record.

This jury never had an opportunity to judge her credibility with the backdrop of her juvenile history. In *State v. Volk,* 331 N.W.2d 67, 71 (S.D.1983), *State v. Layton,* 337 N.W.2d 809 (S.D.1983), and *State v. Wounded Head,* 305 N.W.2d 677 (S.D.1981), each case held that cross-examination of a witness' juvenile record is governed by *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Those cases are precedent. Both *Volk,* a unanimous opinion written by this special writer a decade ago, and

*State v. Brandenburg,* 344 N.W.2d 702, 705 (S.D.1984), "condemn a trial court's ruling to foreclose a defendant from impeaching a witness to establish bias and prejudice." *Koepsell,* 508 N.W.2d at 597 (Henderson, J., dissenting).

*Volk* also quoted *Davis,* 415 U.S. at 319–20, 94 S.Ct. at 1112:

> Whatever temporary embarrassment might result to [the witness] or his family by disclosure of his juvenile record—if the prosecution insisted on using him to make its case—is outweighed by petitioner's right to probe into the influence of possible bias in the testimony of a crucial identification witness.

\* \* \* \* \* \*

The State's policy interest in protecting the confidentiality of a juvenile offender's record cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness. The State could have protected [the witness] from exposure of his juvenile adjudication in these circumstances by refraining from using him to make out its case; the State cannot, consistent with the right of confrontation, require the petitioner to bear the full burden of vindicating the State's interest in the secrecy of juvenile criminal records.

Writing for a unanimous court in *Layton,* this special writer noted *Davis* makes clear that "the admission of juvenile adjudications is a matter of constitutional dimension only where the witness is crucial to the prosecution's case." *Layton,* 337 N.W.2d at 813 (quoting *Wounded Head,* 305 N.W.2d at 681). Unquestionably, N.G. is a crucial witness.

"[E]xposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Van Arsdall,* 475 U.S. at 678–79, 106 S.Ct. at 1435. Confrontational Clause errors are subject to harmless error analysis, subject to the following test:

> The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable

doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Koepsell,* 508 N.W.2d at 595 (quoting *Van Arsdall,* 475 U.S. at 684, 106 S.Ct. at 1438).

In the seminal case in this Nation, *Davis,* the key prosecution witness was on probation as a juvenile offender. Identical situation here.

Here, there existed a curtailment of cross-examination in deprivation of Sprik's Sixth Amendment rights. A trial court's "latitude in the control of cross-examination ... 'cannot be expanded to justify a curtailment which keeps from the jury relevant and important facts bearing on the trustworthiness of crucial testimony.'" *United States v. Harris,* 501 F.2d 1, 8 (9th Cir.1974) (quoting *Gordon v. United States,* 344 U.S. 414, 423, 73 S.Ct. 369, 375, 97 L.Ed. 447 (1953)). *See Wounded Head,* 305 N.W.2d at 680.

Therefore, I respectfully dissent as the error was not harmless beyond a reasonable doubt.